**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ELIJAH JOHNSON,

                                        Plaintiff,                    5:16-cv-00622 (BKS/DEP)

v.

THE CITY OF SYRACUSE, POLICE OFFICER
MAURO, POLICE OFFICER LASHOMB, POLICE
OFFICER QUONCE and UNIDENTIFIED SYRACUSE
POLICE OFFICERS, all sued herein in their capacity as
individuals,

                                        Defendants.

**APPEARANCES:**

*For Plaintiff:*
Fred Lichtmacher
The Law Office of Fred Lichtmacher, P.C.
116 West 23rd Street, Suite 500
New York, NY 10011

*For Defendants:*
Joseph H. Fahey
Senior Assistant Corporation Counsel
300 City Hall
Syracuse, NY 13202

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

        Plaintiff Elijah Johnson brings this action under 42 U.S.C. § 1983, alleging that

Defendant Police Officers Joseph Mauro, William LaShomb, and Gordon Quonce subjected him

to excessive force and failed to intervene in violation of the Fourth and Fourteenth Amendments

during an incident that occurred on the evening of July 5, 2014 into the early morning of July 6,

2014 in Syracuse, New York.  (Dkt. No. 22).  Defendants now move for partial summary

judgment under Rule 56 of the Federal Rules of Civil Procedure, (Dkt. No. 57), and Plaintiff has

opposed the motion, (Dkt. No. 61).  For the reasons that follow, Defendants' motion is granted in

part and denied in part.

## II.   FACTS[1]

On the evening of July 5, 2014 at approximately 11:00 p.m., Plaintiff and two of his

friends, Patrick Johnson and Jafonta Johnson,[2] went to a party on Comstock Avenue near

Syracuse University in Patrick's blue Cadillac.  (Dkt. No. 57-16, ¶ 1).  Plaintiff was wearing

Polo boots, cream-colored pants, and a green Polo shirt with a yellow stripe around the

midsection.  (*Id*. ¶ 2).  When they arrived at the Comstock Avenue party, there were

approximately sixty people socializing in the street and listening to music playing from vehicles

parked nearby.  (*Id.* ¶ 2).  The crowd continued growing, and approximately one hour later, there

were about two hundred people on the street—around that time, the police arrived to break up

the crowd.  (*Id.* ¶¶ 2–3).  Plaintiff and his friends then returned to the Cadillac and left for

another party they had heard about on nearby Sumner Avenue.  (*Id.* ¶ 3).  There were

approximately sixty to eighty people outside at the Sumner Avenue party when Plaintiff and his

friends arrived.  (*Id.* ¶ 5).  They had been there for approximately thirty minutes, when the police

arrived and directed the people there to leave the street.  (*Id.* ¶¶ 6–7).  Defendants testified that

partygoers had thrown rocks at them repeatedly throughout the evening.  (Dkt. No. 57-9, at 26;

Dkt. No. 57-10, at 29, 36–37; Dkt. No. 57-11, at 64–65).  Officer Ahmad Mims testified that

---

[1] The facts stated herein are drawn from the parties' submissions, including the parties' statements of material facts and responses (Dkt. Nos. 57-16; 61-1) and the exhibits the parties have submitted, to the extent that they would be admissible as evidence.  Where facts stated in a party's statement of material facts are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court has found such facts to be true.  *See* N.D.N.Y. L.R. 7.1(a)(3); Fed. R. Civ. P. 56(e).

[2] Patrick Johnson and Jafonta Johnson are brothers, and are not related to Plaintiff.  (Dkt. No. 57-4, at 22, 54–55; Dkt. No. 57-16, ¶ 11).

Officer Mauro told other officers that night that he observed a black male wearing a green shirt with a yellow stripe throw a rock at police officers.  (Dkt. No. 57-9, at 26–27).

As the police arrived at the Sumner Avenue party, Plaintiff and his friends left in the Cadillac to go to another party on Miles Avenue.  (Dkt. No. 57-16, ¶ 7).  Patrick parked the Cadillac in the driveway of 223 Miles Avenue, even though the party was located in the backyard of 219 Miles Avenue.  (*Id.* ¶ 8).  Again, the police arrived to break up the party—this time after Plaintiff and his friends were there for approximately five minutes—and again, Plaintiff and his friends got back into Patrick's Cadillac, along with four other individuals: Mario Franco, Kenny McFadden, Mike Henry, and Preston Fagen.  (*Id.* ¶¶ 9–11).  Plaintiff and the six others sat in Patrick's Cadillac for ten to fifteen minutes with the windows down, during which time Plaintiff did not hear police in the area.  (*Id.* ¶ 12).  Plaintiff was sitting in the back seat, behind the driver, when two police officers approached the Cadillac.  (*Id.* ¶¶ 13–14).  Officer Mims approached from the passenger side, shined a flashlight into the vehicle, and the officers told the seven occupants of the vehicle to put their hands up.  (*Id.* ¶ 15–16).  As more officers began to arrive at the scene, the police removed Mario Franco, Jafonta Johnson, Michael Henry, and Preston Fagen from the Cadillac and placed them into custody.  (*Id.* ¶ 17–20).

As Plaintiff moved to exit through the rear driver's side door, an unknown officer who was standing at the rear driver's door told Plaintiff to wait.  (*Id.* ¶ 23).  Plaintiff testified that the officer used a radio on his shoulder to report "we have a green shirt."  (Dkt. No. 57-4, at 68).  After one or two minutes, Officer Mauro approached the rear driver's side door, where Plaintiff was seated.  (Dkt. No. 57-16, ¶ 26).  Mario Franco, Kenneth McFadden, Preston Fagen, and Plaintiff all testified that Officer Mauro asked Plaintiff if he "like[d] throwing rocks at cops," and forcefully removed him from the Cadillac.  (Dkt. No. 61-1, ¶ 26; Dkt. No. 57-5, at 52–53; Dkt.

No. 57-6, at 83; Dkt. No. 57-7, at 45–46).  Officer Mauro testified that he only asked Plaintiff to get out of the vehicle.  (Dkt. No. 57-12, at 48).  Officers Quonce and LaShomb testified that they were focused on the other occupants of the vehicle, (Dkt. No. 57-10, at 15; Dkt. No. 57-11, at 20), but Officer LaShomb testified that he "realized or saw a struggle between [Plaintiff] and Officer Mauro," and that Plaintiff "wasn't going into the handcuffs."[3]  (Dkt. No. 57-11, at 20).  Plaintiff testified that even though he did not resist Officer Mauro's attempt to place him in handcuffs, Officer Mauro punched him in the face anyway.  (Dkt. No. 57-4, at 78).

Although the parties dispute the order of events, Plaintiff testified that Officer Mauro "slammed" him against the trunk area of the car, again asked if he "like[d] throwing rocks at cops," and punched Plaintiff in the face with a closed fist.  (Dkt. No. 57-4, at 78).  Plaintiff testified that he was punched again in the "back right," and his legs were swept from under him by an unknown officer.  (*Id.* at 80).  Officer Mauro testified that he "tackle[d]" Plaintiff to the ground to prevent Plaintiff from further resisting the handcuffs.  (Dkt. No. 57-12, at 34).  Officers Quonce and LaShomb testified that they did not see how Plaintiff ended up on the ground.  (Dkt. No. 57-10, at 22; Dkt. No. 57-11, at 22).  Officer Mauro also testified that Officers Quonce and LaShomb "assisted once [Plaintiff] began to resist."  (Dkt. No. 57-12, at 48).

Plaintiff testified that he was dragged by "the initial officer that punched" him and one other officer approximately six to eight feet away from the Cadillac by his legs and shoulders. (Dkt. No. 57-4, at 84–85).  Officer Quonce stated that he dragged Plaintiff by the leg away from the Cadillac because he was concerned that the other occupants of the car might be armed and

---

[3] The record contains conflicting testimony as to whether Plaintiff was handcuffed as he was being beaten by the officers.  Plaintiff testified that he felt the handcuff come off his left hand just before he was punched for the second time while his right hand was free.  (Dkt. No. 57-16, ¶ 32).  Preston Fagen, meanwhile, testified that Plaintiff was handcuffed behind his back within "the first ten seconds [after being taken] out of the car."  (Dkt. No. 57-7, at 51, 55–56).  Defendant LaShomb testified that he was "100 percent" certain that Plaintiff was not in handcuffs by the time Plaintiff was taken to the ground.  (Dkt. No. 57-11, at 10).

might attempt to assist Plaintiff while Officer Mauro struggled to take Plaintiff into custody. (Dkt. No. 57-10, at 33).  Plaintiff testified that after he was dragged face down and away from the vehicle, three officers approached him and struck him on the face, head, ribs, and stomach, while an unknown female officer held his legs.  (Dkt. No. 57-4, at 87–88).  While Officer LaShomb claims that it was necessary to use force against Plaintiff because he was "thrashing" around and actively resisting arrest, (Dkt. No. 57-11, at 11), both Officers LaShomb and Mauro testified that Plaintiff did not attempt to punch or kick the officers while he was on the ground, (Dkt. No. 57-11, at 45; Dkt. No. 57-12, at 71).  Officer LaShomb testified that he punched Plaintiff in the face and delivered two "knee strikes" to Plaintiff's midsection while Plaintiff was "on the ground just lying there motionless . . . thrashing from side to side with his hands tucked underneath his upper torso."  (Dkt. No. 57-11, at 11).  Plaintiff testified that, while he was on the ground and surrounded by the three officers, he repeatedly said: "Stop.  I'm not resisting."  (Dkt. No. 57-4, at 86).  Officer LaShomb testified that he and Officer Quonce helped Officer Mauro "subdue" Plaintiff while he was resisting arrest.  (Dkt. No. 57-11, at 11).  Plaintiff testified that, as two unidentified police officers brought Plaintiff to his feet, the "initial officer that was there" punched him again in the face and asked: "Do you like how I broke your fucking nose?"  (Dkt. No. 57-4, at 89, 96).  According to testimony of Defendants and non-party witnesses, the altercation lasted anywhere from thirty to sixty seconds.  (Dkt. No. 57-11, at 29; Dkt. No. 57-5, at 74; Dkt. No. 57-6, at 74).

Plaintiff was then arrested and charged with inciting a riot, rioting in the second degree, trespassing, and resisting arrest.  (Dkt. No. 57-16, ¶ 45).  After independently seeking medical attention the next day, Plaintiff was diagnosed with a bloody sclera, mild concussion, fractured nose, abrasions on his face, bruised ribs, and cuts and bruises on his back.  (Dkt. No. 61-1, ¶ 73).

Plaintiff was ultimately convicted of rioting in the second degree and trespassing, (Dkt. No. 57-16, ¶ 45), and was acquitted of resisting arrest, (Dkt. No. 61-1, ¶ 45).

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the

6

movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).  Still, the

nonmoving party "must do more than simply show that there is some metaphysical doubt as to

the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986),

and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome

a motion for summary judgment."  *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)

(quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)).  Furthermore,

"[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of

material fact where none would otherwise exist."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir.

2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

## IV.    DISCUSSION

### A.    Excessive Force

Defendants argue that Plaintiff's excessive force claim against Defendant Quonce[4]

should be dismissed because Defendant Quonce's actions were "objectively reasonable under the

circumstances."  (Dkt. No. 57-17, at 8).  Plaintiff responds that, because there is a genuine issue

of material fact as to Defendant Quonce's conduct and the severity of the force he used,

summary judgment would be inappropriate.  (Dkt. No. 61, at 3–6).  The Court agrees with

Plaintiff.

The Supreme Court has held that "*all* claims that law enforcement officers have used

excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure'

of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness'

standard."  *Graham v. Connor*, 490 U.S. 386, 395 (1989).[5]  A determination of reasonableness

---

[4] Defendants do not move for summary judgment as to the excessive force claim against Officers Mauro or LaShomb.

[5] The Fourth Amendment applies to the States through the Fourteenth Amendment.  *Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011).

under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted).  "In conducting that balancing, [courts] are guided by consideration of at least three factors: (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Here, Plaintiff has raised an issue of fact as to whether Defendant Quonce used excessive force in dragging Plaintiff away from the vehicle and assisting Defendants LaShomb and Mauro with the arrest.  Plaintiff testified that he did not resist arrest or otherwise do anything to justify being dragged away from the vehicle.  (Dkt. No. 57-4, at 74–83).  Meanwhile, Defendant Quonce testified that, "when [Plaintiff] was resisting arrest with Officer Mauro, [Quonce] grabbed [Plaintiff] by his leg and dragged him" approximately fifteen feet away from the vehicle.  (Dkt. No. 57-10, at 10–11).  Mario Franco testified that Defendant Quonce was one of "two to three" officers who dragged Plaintiff away from the vehicle "very aggressively," after which Plaintiff was "screaming and crying" and telling the officers that he "wasn't resisting." (Dkt. No. 57-5, at 59–61).  Furthermore, the parties dispute whether Defendant Quonce had any

further involvement in the altercation.  While Defendant Quonce testified that he did not punch

or kick Plaintiff, (Dkt. No. 57-10, at 20), Defendant LaShomb indicated at deposition that

Defendant Quonce helped to "subdue" Plaintiff.  (Dkt. No. 57-11, at 11–12).  Officer Mauro also

testified that Officer Quonce "assisted once [Plaintiff] began to resist."  (Dkt. No. 57-12, at 48).

And, although the parties dispute whether Plaintiff was resisting arrest or "dodging the punches"

thrown by Defendants, (Dkt. No. 61-8, at 3), Defendants Mauro and LaShomb testified that

Plaintiff did not attempt to punch, kick, or escape them during the struggle.  (Dkt. No. 57-11, at

8; Dkt. No. 57-12, at 70).

From this record, the Court cannot determine whether Defendant Quonce's conduct was

"objectively reasonable" under the circumstances, because there remain genuine issues of

material fact as to both the severity of the force Defendant Quonce applied and extent of his role

in the excessive force alleged.  *See Brown v. City of New York*, 798 F.3d 94, 103 (2d Cir. 2015)

(concluding that "a jury will have to decide whether Fourth Amendment reasonableness was

exceeded" when the plaintiff was taken to the ground by police officers); *Picciano v.

McLoughlin*, 723 F. Supp. 2d 491, 505 (N.D.N.Y. 2010) (denying summary judgment on

excessive force claim where "admissible record evidence exists from which a rational factfinder

could conclude that Defendant's application of force was objectively unreasonable in light of the

facts and circumstances confronting him").  Accordingly, Defendants' motion for summary

judgment as to Plaintiff's excessive force claim against Defendant Quonce must be denied.

### B.    Qualified Immunity

Defendants argue that, even if the record indicates an issue of material fact as to

Plaintiff's excessive force claim, Officer Quonce is protected by the doctrine of qualified

immunity.  (Dkt. No. 57-17, at 6–12).  Plaintiff responds that Defendant Quonce is not entitled to

qualified immunity because there are genuine issues of material fact as to whether it was

objectively reasonable for Officer Quonce to believe that his actions were lawful in dragging

Plaintiff approximately fifteen feet.  (Dkt. No. 61, at 9–11).

"Qualified immunity protects public officials from liability for civil damages when one of

two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or

(b) it was objectively reasonable for the defendant to believe that his action did not violate such

law."  *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479

F.3d 196, 211 (2d Cir. 2007)); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Defendants bear the burden of establishing qualified immunity.  *Vincent v. Yelich*, 718 F.3d 157,

166 (2d Cir. 2013) *cert. denied sub nom. Annucci v. Vincent*, 135 S. Ct. 948 (2015).  The Second

Circuit has recognized that "[t]he right of an individual not to be subjected to excessive force has

long been clearly established."  *Calamia v. City of New York*, 879 F.2d 1025, 1036 (2d Cir.

1989).

As discussed above, Plaintiff has adduced evidence sufficient to indicate that the actions

of Defendant Quonce violated his right to be free from excessive force.  Thus, the relevant

inquiry is whether it was objectively reasonable for Officer Quonce to believe that his actions did

not violate that right.  There are issues of material fact in dispute as to whether Plaintiff complied

with police commands, struggled with Officer Mauro's attempts to handcuff him, or otherwise

resisted arrest, and viewing the facts in the light most favorable to the Plaintiff, the Court cannot

conclude that it was objectively reasonable for Officer Quonce to believe that his actions were

lawful.[6]  Summary judgment is therefore inappropriate.  *See Stephenson v. Doe*, 332 F.3d 68, 77

(2d Cir. 2003); *see also Picciano*, 723 F. Supp. 2d 491, 505 (N.D.N.Y. 2010) ("[I]t is impossible

---

[6] Defendant argues that "Plaintiff may not use his declaration to contradict his prior testimony" regarding whether Defendant Quonce played a role in holding Plaintiff's arms while Plaintiff was punched in the face a final time. (Dkt. No. 62, at 5).  Even disregarding Plaintiff's declaration, however, there is a genuine issue of material fact as to Plaintiff's excessive force claims.  Accordingly, the Court need not address the content of Plaintiff's declaration here.

to 'determine whether [Defendant] *reasonably* believed that [his] force was not excessive when several material facts [are] still in dispute, [and therefore,] summary judgment on the basis of qualified immunity [is] precluded.'") (quoting *Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999)).  Accordingly, Defendants' motion for summary judgment based on qualified immunity as to Defendant Quonce must be denied.

### C.   Failure to Intervene

Defendants argue that Plaintiff's failure to intervene claims should be dismissed because: (i) Officers Mauro and LaShomb cannot be liable for failure to intervene, as they are alleged to have been direct participants in the excessive use of force; and (ii) Officers LaShomb and Quonce were "not in a position to intervene" during the incident.  (Dkt. No. 57-17, at 13–14). Plaintiff responds that: (i) the courts "have allowed excessive force and failure to intervene claims to proceed simultaneously beyond the summary judgment stage" by structuring the verdict sheet so as to prevent "possible inconsistencies in the verdict"; and (ii) it is "undeniable" that "there was a realistic opportunity for officers present to intervene."  (Dkt. No. 61, at 13–14).

In general, "[a] police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it."  *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988)). "Liability may attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene."  *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).  In cases premised on excessive force, "an officer is excused from liability, despite his presence, if the assault is sudden and brief, such that there is no real opportunity to prevent it."  *Cusamano v.*

11

*Sobek*, 604 F. Supp. 2d 416, 429 n.9 (N.D.N.Y. 2009) (internal quotation marks omitted).  When a police officer is "a direct participant in the allegedly excessive use of force, the failure to intervene theory of liability is inapplicable."  *Cuellar v. Love*, No. 11-cv-3632, 2014 WL 1486458, at *8, 2014 U.S. Dist. LEXIS 51622, at *23 (S.D.N.Y. Apr. 11, 2014).

When viewed in the light most favorable to Plaintiff, the testimony of Plaintiff and the other non-party witnesses establishes that (i) Officer Mauro, Officer LaShomb, and one or two other officers punched and kicked Plaintiff for anywhere between thirty and sixty seconds; (ii) the altercation took place approximately six to fifteen feet away from the Cadillac; (iii) Officers Mauro, LaShomb, and Quonce were all in the area for duration of the incident; (iv) none of the officers attempted to stop any of the others from using force against Plaintiff; and (v) Plaintiff was not resisting arrest.  Plaintiff has raised a triable issue of fact as to whether Officers LaShomb and Quonce should have known that Officer Mauro's use of force against Plaintiff was excessive, had the opportunity to act to prevent it, and nevertheless failed to take reasonable steps to intervene.  Although it is a somewhat closer issue as to whether Officer Mauro had an adequate opportunity to stop Officers Quonce and LaShomb, it is nevertheless a question of fact appropriate for determination by a jury.

Finally, Defendants are correct that a defendant "may not be held liable both for using excessive force and for failing to prevent the use of excessive force."  *Buchy v. City of White Plains*, No. 14-cv-1806, 2015 WL 8207492, at *3, 2015 U.S. Dist. LEXIS 163469, at *3–4 (S.D.N.Y. Dec. 7, 2015).  They may, however, be held liable for one or the other, as the Federal Rules of Civil Procedure recognize both that a party may "set out two or more statements of a claim . . . alternatively" and that "[a] party may state as many claims . . . as it has, regardless of consistency."  Fed. R. Civ. P. 8(d)(2), (3).  Thus, "[t]he flexibility afforded by Rule 8 . . . is

especially appropriate in civil rights cases," *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999),

"even at the summary judgment stage of litigation," *Polanco v. Gargir*, No. 14-cv-7986, 2018

U.S. Dist. LEXIS 54758, at *27–28 (S.D.N.Y. Mar. 28, 2018).[7]  Accordingly, Plaintiff's failure

to intervene claims against Defendants Quonce, LaShomb, and Mauro may proceed past

summary judgment.  *See id.* ("To the extent that defendants' motion for summary judgment

relies on the abstract notion that both excessive force and failure to intervene claims may not

proceed past summary judgment against the same defendant, we reject it."); *Cumberbatch v. Port

Auth. of New York & New Jersey*, No. 03-cv-749, 2006 WL 3543670, at *11, 2006 U.S. Dist.

LEXIS 3543670, at *35 (S.D.N.Y. Dec. 5, 2006) ("The Court will thus construe these claims as

pleading in the alternative . . . *i.e.*, the Officers either used excessive force, or one or both of

them failed to intervene while another officer used excessive force.").

### D.      Unidentified Syracuse Police Officers

Defendants argue that, because discovery is now closed and Plaintiff has failed to identify

the Defendant "Unidentified Syracuse Police Officers," Plaintiff's claims against those

unidentified defendants "must be dismissed as a matter of law."  (Dkt. No. 57-17, at 5 n.1).

Plaintiff has not responded to this argument.

Typically, courts "resist dismissing suits against John Doe defendants 'until the plaintiff

has had some opportunity for discovery to learn the identities of responsible officials.'"  *Kearse

v. Lincoln Hosp.*, No. 07-cv-4730, 2009 WL 1706554, at *3, 2009 U.S. Dist. LEXIS 52895, at *4

(S.D.N.Y. June 17, 2009).  Dismissal of a claim, however, "is appropriate '[w]here discovery has

closed and the Plaintiff has had ample time and opportunity to identify and serve John Doe

defendants' but has failed to do so."  *Pilgrim v. LaValley*, No. 11-cv-1331, 2016 WL 1714576, at

---

[7] Westlaw citation unavailable.

*6, 2016 U.S. Dist. LEXIS 44766, at *16 (N.D.N.Y. Mar. 30, 2016) (quoting *Jones v. Rock*, No. 12-cv-0447, 2015 WL 791547, at *21, 2015 U.S. Dist. LEXIS 21650, at *57–58 (N.D.N.Y. Feb. 24, 2015)) (alternations in original), *adopted by* 2016 WL 1700409, 2016 U.S. Dist. LEXIS 55846 (N.D.N.Y. Apr. 27, 2016).  Here, Plaintiff has had sufficient opportunity to identify the unknown police officers through discovery, but has failed to do so.  Accordingly, Plaintiff's claims against Defendant Unidentified Syracuse Police Officers must be dismissed.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion for partial summary judgment (Dkt. No. 57) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Plaintiff's claims against Defendant Unidentified Syracuse Police Officers are **DISMISSED without prejudice** and these Defendants are **DISMISSED** from the action; and it is further

**ORDERED** that Defendants' motion for partial summary judgment (Dkt. No. 57) is otherwise **DENIED** in all other respects;

**IT IS SO ORDERED.**

Dated: April 11, 2018
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

14