UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELIJAH JOHNSON,

                                  Plaintiff,

                                    **DEFENDANTS' TRIAL BRIEF**
                                    Civil Action No.: 5:16-CV-0634
                                    (BKS/DEP)

          v.

THE CITY OF SYRACUSE, POLICE OFFICER
MAURO, POLICE OFFICER LASHOMB, POLICE
OFFICER QUONCE, and UNIDENTIFIED SYRACUSE
POLICE OFFICERS, all sued herein in their capacity as
individuals,

                                   Defendants.
_____

## TRIAL BRIEF

      This Trial Brief is submitted on behalf of defendants Police Officer Joseph Mauro ("Officer Mauro"), Police Officer William LaShomb ("Officer LaShomb"), and Police Officer Gordon Quonce ("Officer Quonce") (collectively, "Defendants").[1]  This litigation between plaintiff Elijah Johnson ("Plaintiff") and Defendants arises out of events that occurred at "pop up" parties that spontaneously occurred various addresses in the City of Syracuse (the "City") over the course of two weekend nights in July of 2014, but culminate at the private address 223 Miles Avenue in City of Syracuse where Plaintiff was criminally trespassing on the early morning of Sunday July 6, 2014, which, among other circumstances, led to Plaintiff's arrest.

---

[1]     On October 10, 2017, the parties stipulated to discontinue all actions against the City of Syracuse and previously named Defendants Mims, Hard, and Gunsalus.  *See* Dkt. No. 53. By Memorandum-Decision and Order dated April 11, 2018, the Court dismissed the "Unidentified Police Officers" as defendants from this action.  *See generally* Dkt. No. 68.

**STATEMENT OF THE CASE**

On the morning of July 5, 2014 at 0033 hrs, City of Syracuse Police Officers responded to a crowd of 50-70 individuals partying in the middle of street in the University area blocking traffic. Some of the individuals refused to disperse despite multiple requests from the police. Officer John Gunsalus attempted to arrest one of the individuals refusing to disperse—Mario Franco—who was standing by Cadillac parked in the middle of the street blocking it.  Upon attempting to arrest and handcuff Mr. Franco, he spun around yelling at Officer Gunsalus, grabbing his uniform and pushing him away.

While Officer Gunsalus was struggling with Mr. Franco, 20-30 of the crowd members surged around him, one of which—Elijah Johnson—a golden gloves boxer, grabbed him by the shirt from behind to interfere with the arrest.  Rightly threatened by the crowd's lawless behavior, Officer Gunsalus radioed for more units and retreated to his patrol car while members of the unruly crowd slung rocks and debris at the police officers as they retreated.  Elijah Johnson would ultimately plead guilty Harassment in the Second Degree for "grabbing the rear collar of [Gunsalus] patrol uniform shirt attempting to intervene with Ofc. Gunsalus affecting a lawful arrest. . . ."  But Johnson would also serve as a witness to a civil excessive force claim brought by Franco against Officer Gunsalus.

The next night, on the evening of July 5, 2014 and the early morning of July 6, 2014 (the "Evening"), Johnson and Franco were at it again. Elijah Johnson went to multiple—three in total— unpermitted outdoor block-styled "flash mob" or "pop up" parties with Patrick Johnson ("Patrick"), Jafonta Johnson ("Jafonta"), and Kenny McFadden ("Kenny").  He would later meet-up at other points of the Evening with Mario Franco ("Mario"), Michael Henry ("Michael"), and

Preston Fagen ("Preston").  Patrick was the driver at all times this Evening of a blue Cadillac, the same car at issue in the altercation that occurred the night before at Victoria Place.  At all times during the Evening, Elijah Johnson was wearing a green polo shirt with a yellow stripe across it, cream-colored pants and Polo boots

Patrick drove Elijah Johnson, with Jafonta as a passenger, to the 100 block of Comstock Avenue in the City of Syracuse ("First Party Site"), arriving at around 11:00 p.m. When Johnson arrived at First Party Site there were initially about sixty (60) people in the street, but more people migrated into the street where music was playing from multiple parked cars, ballooning to about two hundred (200) people outside the First Party Site.  Police arrived there about an hour later, prompting jeering, chanting, and riotous behavior from the crowd.  The police, concerned about the size and unruliness of the crowd, called for additional back up cars.  Three to four police officers began to walk to the crowd to disperse them, without any arrests, at which time the crowd became violent, hurling projectiles (i.e., bottles and rocks) at the police officers and their vehicles. Officer Joseph Mauro witnessed Johnson throw a rock toward the area where police were congregated. Mauro described Johnson by reference to his physical description and his distinctive green polo shirt bearing a yellow stripe (as noted above).  Johnson would later be criminally convicted after a jury trial of Rioting in the Second Degree (Penal Law § 240.05) from his involvement in the violence at the First Party Site.

When the police tried to disperse the crowd at the First Party Site, Johnson fled to the Cadillac, and he, Patrick, Jafonta and Kenny left to find another party nearby on Euclid Avenue, still in the City of Syracuse. Johnson and his retinue were at this location on Euclid Avenue for no more than a minute when bystanders told them to go to another party on Sumner Avenue, also in the City of Syracuse ("Second Party Site").  They then drove Second Party Site where there were

about sixty (60) to eighty (80) people outside. They got out of the Cadillac for about thirty (30) minutes, but stayed nearby the vehicle while socializing with other partygoers, until the police arrived again and ordered people to disburse from the illegal party.  As Johnson, Patrick, Jafonta and Kenny were driving away in the Cadillac, a person named "John" approached and advised the group to go to 219 Miles Avenue for another party ("Third Party Site").

Patrick drove to the Third Party Site, and parked in a parking area behind a private, non-party, residence at 223 Miles Avenue.  Plaintiff did not have the consent of the homeowner or occupants to be there. At that location, Johnson and his companions began playing loud music from a speaker box in the trunk of the Cadillac and dancing with dozens of other partiers in the parking area behind 223 Miles Ave. Plaintiff would later be criminally convicted after a jury trial of criminal Trespass (Penal Law § 140.05) from his presence on the property behind 223 Miles Ave.

Upon the arrival of the police, others at Miles Ave. began running away through the back yard of 219 Miles Ave and jumping over a fence.  Johnson and six of his friends decided to get in the Cadillac, turn off the music and attempt to wait out the police.

Johnson and the other six (6) vehicle occupants sat in the Cadillac for ten (10) to fifteen (15) minutes, attempting to evade detection by the police. Investigating a complaint of noise and music coming from the back of 223 Miles Ave, three (3) police officers approached the Cadillac, whose windows were down at this time.

Syracuse Police Department ("SPD") Officer Ahmad Mims ("Officer Mims"), one of the three officers, had a flashlight over his shoulder, which he shined into the vehicle as he approached the passenger side. He and Officers LaShomb and Quonce told the vehicle occupants to put their hands up and they began placing the occupants into custody. Mario (front passenger), Jafonta (rear

passenger's side), Michael (front middle passenger), Preston (back passenger, directly behind driver closest to the door), were successively removed from the vehicle and arrested. During this time, Officer Quonce stood at the driver's (Patrick's) door with the door open while Officer LaShomb was on the passenger side of the vehicle. Plaintiff claims an unknown officer ("Unknown Officer") was standing at the rear driver's side door. After Preston was taken into custody, Elijah Johnson slid over, and the Unknown Officer standing at the rear driver's side door told Plaintiff to wait while "he radioed over his shoulder and said, 'we have a green shirt,'" referring to Johnson.

Johnson remained in the vehicle with Patrick (seated in the driver's seat) and Kenny (seated in the backseat on the passenger side) while he waited for further instructions. About one (1) or two (2) minutes later, Officer Mauro responded to the scene and went to the rear driver's side door where he positively identified Johnson as the individual who was throwing rocks at the First Party Site and asked Johnson to exit the vehicle so he could be arrested.

Once out of the vehicle, Officer Mauro told Plaintiff to put his hands behind his back. Plaintiff then jerked his hands away from Officer's Mauro grasp and turned to resist being handcuffed. Pursuant to his training, Officer Mauro then took Plaintiff to the ground to prevent him from pulling away further from being handcuffed. Officer Quonce and Officer LaShomb were focused on the other occupants of the Cadillac at that time, but Officer LaShomb witnessed a brief struggle between Plaintiff and Officer Mauro part of which occurred on the ground, where Johnson was actively refusing and resisting handcuffing, and realized that Officer Mauro needed assistance. Both Officers Mauro and LaShomb administered hand strikes to Johnson to secure his cooperation in handcuffing. Handstrikes, a well-accepted defensive tactic taught to police offices, including in Syracuse Police Department Training, are utilized when an arrestee is activity resisting by

refusing to be handcuffed.  At no point, did any officer strike Johnson after he was successfully handcuffed.

Officer Quonce did not see how Plaintiff went to the ground, but heard yelling, looked to his right and saw Plaintiff and Officer Mauro struggling on the ground. He observed that parts of their bodies were underneath the Cadillac, which presented a danger separate and apart from the resistance.  Officer Quonce then assisted Officer Mauro by dragging Plaintiff by his foot some distance out from under the Cadillac and away from the remaining occupants who had yet to be searched. Officer Quonce was concerned that the occupants would exit the vehicle, which had yet to be searched, and try to assist Plaintiff or otherwise interfere while Officer Mauro was trying to take him into custody. Officer Quonce did not know whether the occupants were armed or had access to weapons.  Officer Quonce at no point punched, kicked, struck or otherwise used any force against Johnson other than moving him away from the vehicle for the purpose of officer and bystander safety.

After being moved away from the vehicle, Plaintiff claims an unknown female officer held his legs while he was being struck while he was handcuffed. That officer has not been identified as an SPD officer. No female City of Syracuse police officer was present at the Site while the brief struggle ensued.

For weeks after the incident, Johnson would testify falsely that Officer Gunsalus, the officer he pleaded guilty to harassing the night before, was the individual who punched him. Officer Gunsalus, however, was not even present when Johnson was taken into custody on Miles Ave. As a result of the foregoing, Plaintiff was charged with Inciting a Riot (Penal Law § 240.08), Reckless Endangerment in the Second Degree (Penal Law § 120.20), Rioting in the Second Degree (Penal Law § 240.05), Trespass (Penal Law 140.05), and Resisting Arrest (Penal Law § 205.30).

After a trial in Syracuse City Court, Plaintiff was convicted of Rioting in the Second Degree and Trespass.

## CLAIMS TO BE TRIED

Six claims remain for trial following the Court's Memorandum-Decision and Order, dated April 11, 2018.

### Excessive Use of Force

(against Officer Mauro, Officer LaShomb, and Officer Quonce)

Plaintiff brings a claim under 42 U.S.C. § 1983 claim for excessive use of force, pursuant to both the Fourth and Fourteenth Amendments to the U.S. Constitution, against Officers Mauro, LaShomb, and Quonce.  Plaintiff claims that Mauro, LaShomb, and Quonce used excessive and unreasonable force against him while effectuating his arrest on July 6, 2014.  *See* Dkt. No. 22, ¶¶ 48-53 (First Claim for Relief in Amended Complaint).

### Failure to Intervene

(against Officer Mauro, Officer LaShomb, and Officer Quonce)

Plaintiff brings a claim under 42 U.S.C. § 1983 claim for failure to intervene against Officers Mauro, LaShomb, and Quonce.  Plaintiff claims that while he was allegedly subjected to the use of excessive and unnecessary force, Officers Mauro, LaShomb, and Quonce had a duty and a reasonable opportunity to intervene to prevent the allegedly unreasonable use of force, causing Plaintiff injury during his arrest on July 6, 2014.  *See* Dkt. No. 22, ¶¶ 54-58 (Second Claim for Relief in Amended Complaint).

## ANTICIPATED LEGAL ISSUES AT TRIAL

The following discussion constitutes the basic relevant legal standards for each of the claims to be tried, as well as  Defendants' discussion of what the relevant evidence will show at trial with respect those claims.  Defendants also set forth anticipated legal issues for trial.

**I.      Plaintiff's § 1983 Excessive Use of Force Claims**

For excessive use of force claims, "[p]olice officers' application of force is excessive . . . if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  A number of factors are relevant to this inquiry, including the following: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham*, 490 U.S. at 396).  The Court must evaluate a police officer's use of force from the understanding of a reasonable police officer at the incident—not from hindsight.  *Graham*, 490 U.S. at 396.

The Supreme Court has acknowledged that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id*. at 397.  Rather, "[t]he force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000).  The inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S.

at 396.  In assessing an excessive force claim, a court should evaluate the record "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Wilkinson v. Lewis*, 289 F. Supp. 3d 371, 385 (N.D.N.Y. 2018) (quoting *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 491 (N.D.N.Y. 2017)).

The evidence at trial will show that the arresting officers' use of force was objectively reasonable, defeating Plaintiff's excessive force claims against Officers Mauro, LaShomb, and Quonce.  The evidence will show that, at the time of the arrest, Plaintiff: (a) was known to have used force in the form of throwing a projectile at officers earlier and acted with impunity to incur harm on police officers, creating an increased risk of volatility; (b) Plaintiff was a flight risk, as he had previously fled lawful arrest after throwing the same projectile; (c) actively resisted arrest by refusing to be handcuffed; (d) ignored lawful commands that he cease resisting while being lawfully arrested; (e) that unsearched persons in the Cadillac created an exigent collateral threat to police officers who were attempting to arrest a resistant Plaintiff; and that (f) Plaintiff suffered no medically significant or permanent injury from the incident.  The evidence will also show that hand and knee strikes are a well-accepted technique for achieving compliance of an actively resisting arrestee and are considered to be a lower level and proportional level of force. Under these circumstances, each of the arresting officers were justified in using force to arrest Plaintiff.

Furthermore, a "*de minimis* use of force will rarely suffice to state a constitutional claim." *Topolski v. Cottrell*, No. 5:11-cv-1216 MAD/ATB, 2012 U.S. Dist. LEXIS 112018 * 9 (N.D.N.Y. Aug. 9, 2012) (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)).  "For a claim of excessive force to be actionable, a plaintiff must demonstrate that it was 'objectively sufficiently serious or harmful.'" *United States v. Walsh*, 194 F.3d 37, 50 (2d Cir.1999).  "Stated another way, 'the force used by a defendant [generally] must be more than *de minimis* in order for a plaintiff's

claim to be actionable.'" *Piper v. City of Elmira*, 12 F.Supp.3d 577, 588 (W.D.N.Y. 2014) (quoting *Bell v. Chemung Cnty.*, 2006 WL 839413, *3 (W.D.N.Y. Mar. 27, 2006). "*De minimis* injury can serve as conclusive evidence that *de minimis* force was used." *Washpon v. Parr*, 561 F.Supp. 2d 394, 407 (S.D.N.Y. 2008) (quoting *Carr v. Deeds*, 453 F.3d 593, 606 (4th Cir. 2006)).  "Courts in this Circuit have consistently held that an injury is *de minimis* when it is temporary and/or minor in severity." *Smith v. City of New York*, No. 4 Civ. 3286 TPG, 2010 U.S. Dist. WL 3397683 *10 (S.D.N.Y. Aug. 27, 2010).  Where, as here, "there has been no injury or only minor injuries, courts have granted summary judgment dismissing claims of excessive force." *Burdick v. Johnson*, 2009 WL 1707475, *4 (N.D.N.Y. Jun 17, 2009).

Evidence at trial will show that Officer Quonce did not punch, kick, or otherwise strike Plaintiff.  The evidence will show that Officer Quonce was reasonable in his actions of moving Plaintiff from his close proximity to the Cadillac for officer and public safety (for the reasons stated in the "statement of case," *supra*).  Evidence will show that Officer Quonce's use of force to move Plaintiff (who was actively resisting) was *de minimis* and does not arise to unreasonable force.  Finally, the evidence will show that Plaintiff suffered nothing more than a temporary and/or minor injury in being moved, and so any injury was *de minimis*.

For those reasons, Plaintiff's excessive use of force claims must fail.

## II.    Plaintiff's § 1983 Failure to Intervene Claims

"It is widely recognized that law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (*quoting Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer

observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." *Anderson*, 17 F.3d at 557 (citations omitted). To establish a claim for failure to intervene, a plaintiff must show that (1) the officer's failure "permitted fellow officers to violate [the plaintiff's] clearly established statutory or constitutional rights," and (2) it was "objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights." *Ricciuti v. New York City. Transit Auth.,* 124 F.3d 123, 129 (2d Cir. 1997) (citation and internal quotation marks omitted).

If a defendant "may be liable under a theory of direct participation, there is no claim against [that defendant] for failure to intervene." *Chepilko v. City of New York*, No. 06–CV–5491, 2012 WL 398700, at *8 n.5 (E.D.N.Y. Feb. 6, 2012); *see also Buchy v. City of White Plains*, No. 14–CV–1806, 2015 WL 8207492, *3 (S.D.N.Y. Dec. 7, 2015) (noting that liability based on the failure to intervene is inapplicable to a law enforcement officer who was a direct participant in the allegedly excessive use of force); *Hardy v. Baird*, No. 13-CV-7402, 2016 WL 2745852, * 11 (S.D.N.Y. May 10, 2016)(where the officer is a direct participant in the allegedly unlawful conduct, the failure to intervene theory of liability does not apply); *Cuellar v. Love*, No. 11–CV–3632, 2014 WL 1486458 at *8 (S.D.N.Y. 2014); *see Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir.1988) (rejecting plaintiff's claims of failure to intervene as a matter of law where the alleged excessive force consisted of three rapid blows because the officer "had no realistic opportunity to prevent them"); *see also Sash v. United States*, 674 F.Supp.2d 531, 545 (S.D.N.Y.2009) (finding that no reasonable jury could conclude that the defendant officers had a genuine opportunity to intercede where "the entire incident took less than thirty seconds"); *Rodriguez v. City of New York*, No. 10 Civ. 9570, 2012 WL 1658303,

at *5 (S.D.N.Y. May 11, 2012) ("the mere fact that [an officer] was present for the entire incident does not, on its own, establish that he had either awareness of excessive force being used or an opportunity to prevent it.")

Notwithstanding the fact that evidence at trial will show that all of the force utilized by the officers was reasonable (thus not excessive), the evidence will also show that Plaintiff's theory of liability against Officer Mauro for his direct participation in the use of force against Plaintiff will prevent his implication for failure to intervene.  For this reason, Plaintiff's failure to intervene claims against Officer Mauro must fail. The evidence at trial will also show that Officer LaShomb, based on where he was at the time of the arrest, did not and could not see how Plaintiff went to the ground and was otherwise unable to intervene because he was focused on the remaining occupants of Patrick's Car. Moreover, evidence will show that because Officer LaShomb did in fact use force and was directly involved in Plaintiff's arrest and so cannot be implicated for a failure to intervene. For these reasons, Plaintiff's failure to intervene claims against Officers Mauro and LaShomb must fail.

Finally, the evidence at trial will also show that, similar to Officer LaShomb, Officer Quonce was standing in a position where he did not and could not see how Plaintiff got to the ground and that he was in a position to intervene, assuming, but not conceding, that excessive force was being used by other officers.  For these reasons, Plaintiff's failure to intervene claims against Officer Quonce must fail.

## III.     Qualified Immunity

Defendants have asserted an affirmative defense of qualified immunity.  "Under federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or

(2) it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). "Whether a defendant officer's conduct was objectively reasonable is a mixed question of law and fact." *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007); *see also Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004). "[A] reasonable officer is not required to foresee judicial decisions that do not yet exist in instances where the requirements of the Fourth Amendment are far from obvious." *Kisela v. Hughes*, 138 S Ct 1148, 1154 (2018). "The ultimate question of whether it was objectively reasonable for the officer to believe that his conduct did not violate a clearly established right, *i.e.,* whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court." *Zellner,* 494 F.3d at 367. To be clearly established, "a legal principle must have a sufficiently clear foundation in then-existing precedent," *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018), and "the legal principle [must] clearly prohibit the officer's conduct in the particular circumstances before him," *id.* at 590.

An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood he was violating it." *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014). "If there is no dispute as to the material historical facts, the matter of whether the officer's conduct was objectively reasonable is an issue of law to be determined by the court." *Zellner,* 494 F.3d at 368. "[I]f there is such a dispute," however, "the factual questions must be resolved by the factfinder." *Id*. (citing *Kerman,* 374 F.3d at 109).

It is respectfully submitted that it was not "clearly established" that it would be unreasonable for Officer Mauro and Officer LaShomb to use force to achieve compliance to effectuate a lawful arrest with a resistant Plaintiff, given the contours of the facts that will be shown

by evidence at trial (and as noted above).  Moreover, evidence at trial will show that it is not "clearly established" that it would be unreasonable for Officer Quonce to move Plaintiff from Patrick's Car  where it was still occupied and Officer Quonce was concerned that the occupants would exit the vehicle and try to assist the Plaintiff in resistance while Officer Mauro was trying to take him into custody.

Furthermore, even assuming, *arguendo*, that this right was "clearly established" the question arises as to whether it was objectively reasonable for the arresting officers to believe that their actions did not violate Plaintiff's right to be free from excessive force.  "[T]he question for the purposes of qualified immunity is 'whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances.'"  *Id.* at 425.

The evidence at trial will show that the arresting officers had actual probable cause, based on the circumstances, to arrest Plaintiff (clearly established by his criminal convictions).  The evidence will also establish that, under the circumstances—including Plaintiff's refusal to submit to handcuffing and aggressive conduct toward Officer Mauro—that it was objectively reasonable for the arresting officers to use the amount of force that they did when arresting Plaintiff, without infringing on his Fourth Amendment rights.

Defendants request that, in the event that the jury finds in favor of Plaintiffs on any claim for which qualified immunity may attach, the Court submit to the jury special interrogatories related to key factual disputes that will permit the Court to resolve the question of qualified immunity.  The Second Circuit has stated that "the ultimate legal determination of whether qualified immunity attaches to a law enforcement agent's actions is 'a question of law better left for the court to decide.'"  *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (quoting *Warren v. Dwuer*, 906 F.2d 70, 76 (2d Cir. 1990)).  The *Stephenson* court reasoned as follows:

> We have recognized that qualified immunity is in essence a legal decision whether on the basis of the law as it existed at the time of the particular incident, the lawfulness of the officer's conduct was reasonably clear or was a matter of doubt. Juries are hardly suited to make decisions that require an analysis of legal concepts and an understanding of the inevitable variability in the application of highly generalized legal principles. Moreover, such an analysis would seem to invite each jury to speculate on the predictability of its own verdict.

*Id.* (internal quotation marks omitted).  However, the jury still must resolve the factual disputes that are overlapping between the substantive claims against a police officer—in *Stephenson*, the claim at issue was excessive force—and qualified immunity issues.  *See id.*  Accordingly, in *Stephenson*, the Second Circuit has approved the following procedure with respect to qualified immunity.  First, "[t]he court should charge the jury on excessive force, but not on qualified immunity.  If the jury returns a verdict of excessive force against [the police officer], the court should then decide the issue of qualified immunity."  *Id.* at 80.  In that case, the Second Circuit suggested that the special interrogatories on key factual disputes that may affect the resolution of the qualified immunity issue included, for example, "whether [the police officer] gave warnings to Stephenson, whether Stephenson was armed with a weapon, and whether [the police officer] actually believed Stephenson was armed."  *Id.* at 81.  Based on the procedure set forth in *Stephenson*, Defendants request that the Court submit to the jury such special interrogatories related to key factual disputes that will permit the Court to resolve the question of qualified immunity.

## IV.   Claims for Relief pursuant to the Fourteenth Amendment regarding use of force should be dismissed as against all Defendants in this case.

The Amended Complaint pleads a 42 U.S.C. § 1983 excessive use of force claim in its First Claim for Relief under two theories of Constitutional liability: Fourth Amendment and Fourteenth Amendment.  However, it is respectfully submitted that any cause of action pursuant to the Fourteenth Amendment is inappropriate and is neither supported by the facts nor the pleadings,

and should be dismissed in advance of trial as a matter of law.  *See* Dkt. No. 22, ¶¶ 48-53 (First

Claim for Relief in Amended Complaint).

A Fourteenth Amendment excessive force claim for relief pursuant to 42 U.S.C. § 1983

does not apply to instances where the plaintiff is the arrestee who is the intended subject to the use

of force in the course of a pre-detention or pre-incarceration arrest.   Rather, Fourteenth

Amendment claims for excessive under 42 U.S.C. § 1983 are at their core allegations of substantive

due process violations that would uniquely apply to limited situations, such as when a plaintiff is

alleging collateral injury from excessive force used during the arrest of a third party (*see Feliciano

v. Thomann*, 747 Fed. App'x 885, 887 (2d Cir. 2019)), when there was deliberate indifference to

the medical needs of a plaintiff (*see Chalco v. Belair*, 738 Fed. App'x 705, 707 (2d Cir. 2018)), or

where the plaintiff is a detainee in the custody of a detention facility (*see Johnson v. Turnbill*, 715

Fed. App'x 84, 85 (2d Cir. 2018)).  It is well-established that "the Fourth Amendment is the only

source of constitutional right to be free from excessive force in an arrest or seizure."  *Barrett v.

City of Newburgh*, 720 Fed. App'x 29, 31 (2d Cir. 2017) (citing, *Graham*, 490 U.S. at 395).

Here, it is undisputed that the arrestee of this subject action is Plaintiff.  Therefore, although

there is dispute of fact as to the force used and its reasonableness, it is clear that Plaintiff's claim

is within the realm of the Fourth Amendment.  Moreover, Plaintiff neither makes any assertions

nor does the record reflect any substantive due process violations of the type that would support a

substantive due process violation in the execution of Plaintiff's arrest.  *See Feliciano*, *Chalco*, and

*Johnson v. Turnbill*, *supra*.  Therefore, Plaintiff has no viable claim pursuant to the 42 U.S.C. §

1983 for excessive force under a Fourteenth Amendment theory and it should be dismissed as a

matter of law.

## CONCLUSION

This Trial Brief is submitted for the limited purpose of highlighting key legal issues expected at trial.  It is not the intent of this Trial Brief to anticipate every legal issue that may arise at trial or capture every aspect or nuance of the applicable legal standards, or to otherwise describe or summarize the evidence that will come in at trial.

Dated: May 13, 2019
      Syracuse, New York

Respectfully submitted,

KRISTEN E. SMITH, ESQ.
CORPORATION COUNSEL
City of Syracuse


By:      /S/
Christina F. DeJoseph, Esq.
Senior Assistant Corporation Counsel
Bar Roll No.: 514784
300 City Hall
233 East Washington Street
Syracuse, New York 13202
Tel: (315) 448-8400
cdejoseph@syrgov.net

## CERTIFICATE OF SERVICE

I, hereby certify that on May 13, 2019, I caused the foregoing to be electronically filed with the Clerk of the District Court, Northern District of New York using the CM/ECF system, which sent notification of such filing to the following:

Fred B. Lichtmacher, Esq.     empirestatt@aol.com
John G. Powers, Esq.       jpowers@hancocklaw.com
Todd M. Long, Esq.        tlong@syrgov.net


Dated: May 13, 2019
      Syracuse, New York

Respectfully submitted,

KRISTEN E. SMITH, ESQ.
CORPORATION COUNSEL
City of Syracuse

By:      /S/
Christina F. DeJoseph, Esq.
Senior Assistant Corporation Counsel
Bar Roll No.: 514784
300 City Hall
233 East Washington Street
Syracuse, New York 13202
Tel: (315) 448-8400
cdejoseph@syrgov.net