UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELIJAH JOHNSON,

                                      Plaintiff,                  5:16-cv-00622 (BKS/DEP)

v.

POLICE OFFICER MAURO, POLICE OFFICER
LASHOMB, and POLICE OFFICER QUONCE, all sued
herein in their capacity as individuals,

                                        Defendants.
_____

**Appearances:**

*For Plaintiff:*
Fred Lichtmacher
The Law Office of Fred Lichtmacher, P.C.
116 West 23rd Street, Suite 500
New York, NY 10011

*For Defendants:*
Christina F. DeJoseph
Senior Assistant Corporation Counsel
300 City Hall
Syracuse, NY 13202

John G. Powers
Hancock Estabrook LLP
1800 AXA Tower I
100 Madison Street
Syracuse, NY 13202

**Hon. Brenda K. Sannes, United States District Judge:**

MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

      Plaintiff Elijah Johnson brings this action under 42 U.S.C. § 1983 alleging that Defendant

Police Officers Joseph Mauro, William LaShomb, and Gordon Quonce subjected him to

excessive force and failed to intervene in violation of the Fourth and Fourteenth Amendments during an incident in the early morning of July 6, 2014 in Syracuse, New York. (Dkt. No. 22). Presently before the Court are the parties' motions in limine, (Dkt. Nos. 88, 100), and responses thereto, (Dkt. Nos. 108, 109). The parties' motions in limine are granted in part and denied in part, as set forth below.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The Court assumes familiarity with the procedural and factual background of this case, as set forth in its April 11, 2018 memorandum decision and order. *See Johnson v. City of Syracuse*, No. 16-cv-00622, 2018 U.S. Dist. LEXIS 73764 (N.D.N.Y. Apr. 11, 2018).[1]

## III. DISCUSSION

### A. Evidence of Plaintiff's Subsequent Arrests

Plaintiff moves to preclude evidence of his arrests "subsequent to July 6, 2014, as none of his arrests resulted in a conviction which would be admissible" under Federal Rules of Evidence 608 or 609. (Dkt. No. 88, at 1). Defendants respond that they "do not intend to offer such evidence unless Plaintiff opens the door in a manner that would make such evidence relevant to impeachment." (Dkt. No. 109, at 2). Any such impeachment evidence would need to be proffered outside the presence of the jury for a ruling by the Court. Accordingly, at this time the Plaintiff's request is denied as moot.

### B. Impeachment Evidence of Witnesses' Arrests and Convictions

Plaintiff moves to preclude: (i) impeachment of his witnesses with arrests that did not result in conviction; and (ii) impeachment of Plaintiff or his witnesses with imperfect memory of prior arrests. (Dkt. No. 88, at 3–4). Defendants respond that they "do not intend to impeach any

---

[1] Westlaw citation unavailable.

witness with arrests" or "based on their purported imperfect recollections of their prior arrests as demonstrated in their depositions." (Dkt. No. 109, at 2). Accordingly, at this time the Plaintiff's request is denied as moot.

Plaintiff also notes that Federal Rule of Evidence 609 "must be invoked" should Defendants seek to admit evidence of a witness's prior conviction of which he is unaware. (Dkt. No. 88, at 3). At the May 29, 2019 pretrial conference, Defendants indicated that Preston Fagan's felony conviction is the only conviction of which they are aware that is presumptively admissible under Federal Rule of Evidence 609. Plaintiff's counsel indicated that he does not intend to call Preston Fagan as a witness at trial, and Defendants' witness list indicates that Mr. Fagan "will be called if needed." (Dkt. No. 114). Accordingly, the Court will rule on any such issue at the appropriate time at trial, should the need arise.

### C. Evidence of Plaintiff's Prior Medical Treatment

Plaintiff seeks to preclude "medical evidence of a pre-existing injury at trial" in the absence of expert medical testimony "to connect a prior injury to the injuries sustained [on] the date of the incident." (Dkt. No. 88, at 4). At the final pretrial conference Defendants indicated that they may be receiving medical evidence of a pre-existing injury. The Court directed defense counsel to inform the Court by June 5, 2019 if there is any disputed issue regarding the admissibility of evidence of a pre-existing injury. Accordingly, at this time Plaintiff's motion is denied as moot, and the Court will rule on any issue that arises at trial.

### D. Evidence of July 5, 2014 Incident

Plaintiff moves to preclude evidence of his interaction with Officer Gunsalus in the early morning of July 5, 2014, the night before the incident giving rise to Plaintiff's claims asserted in this case. (Dkt. No. 88, at 5). During the July 5 incident, Plaintiff is alleged to have committed a violation (harassment in the second degree under New York Penal Law § 240.26) by "grabbing

3

the rear collar of [Gunsalus's] patrol uniform shirt attempting to intervene with [Officer] Gunsalus affecting a lawful arrest on" Mario Franco. (Dkt. Nos. 109-1; 109-2, at 2). Plaintiff pleaded guilty to that charge.[2] (Dkt. No. 109-1, at 2). Plaintiff argues that evidence of the July 5 incident "could lead to confusion," and "a trial within a trial," and "the sole issue in this trial should be whether the officers used excessive force" against Plaintiff the following night. (Dkt. No. 88, at 5).

Defendants respond that evidence of the July 5, 2014 incident is admissible under Federal Rule of Evidence 404(b) because Plaintiff's "continuing pattern or course of conduct" relating to his "disrespect and disregard for police direction, active interference with the police, . . . lawlessness," and "repeated altercations with police . . . make it more likely that the latter events occurred." (Dkt. No. 109, at 8–10). Rule 404(b) precludes evidence "of a crime, wrong, or other act to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). For such evidence to be admissible, it must: (i) be "offered for a proper purpose," (ii) be "relevant to a material issue in dispute," (iii) hold "probative value . . . substantially outweighed by its prejudicial effect"; and (iv) be accompanied by "an appropriate limiting instruction to the jury if so requested." *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004). Here, Defendants' attempt to use evidence of Plaintiff's prior "lawless" behavior to show that it is more likely that he resisted arrest during the July 6 incident, however, "amounts to no more than a veiled attempt to do what Rule 404(b) expressly prohibits—introducing evidence of bad acts to show the defendant's propensity to commit such acts." *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991); *see also Hynes v.*

---

[2] In relevant part, a person is guilty of harassment in the second degree under New York law "when, with intent to harass, annoy or alarm another person: . . . [h]e or she strikes, shoves, kicks, or otherwise subjects another person to physical contact, or attempts or threatens to do the same." N.Y. Penal Law § 240.26.

4

*Coughlin*, 79 F.3d 285, 291–92 (2d Cir. 1996) (explaining that "the proper purpose of pattern evidence is principally to show the identity of the perpetrator or the absence of accident or mistake").

Finally, Defendants' contention that Plaintiff's July 5 conduct is relevant as "background and context . . . intertwined with the events of the next night," (Dkt. No. 109, at 10), is at this point unpersuasive. Defendants have not argued that evidence of Plaintiff's July 5 conduct is so "relevant to understanding why the officers were sent to" the scene of the noise complaint or "their knowledge of what they might be facing" with respect to the arrest of Plaintiff such that, were the jury to be "prevented from hearing about these events, they will be left with an unduly sanitized and incomplete version of the facts." *Hartman v. Snelders*, No. 04-cv-1784, 2010 WL 11626508, at *15–16 (E.D.N.Y. Jan. 28, 2010).[3] Defendants argue that the Plaintiff's "repeated involvement with 'pop-up parties' on successive nights with repeated altercations with the police provide context and dimension to . . . his decision to throw rocks at the police . . . [and] make it more likely that the" events they described on July 6 occurred. (Dkt. No. 109, at 10). The Court finds that even assuming that Plaintiff's conduct on July 5 is sufficiently intertwined so as to render it direct evidence obviating the need for application of Rule 404(b), *United States v. Rivera*, No. 13-cr-149, 2015 WL 1875658, at *8, 2015 U.S. Dist. LEXIS 53169, at *26 (E.D.N.Y. Apr. 22, 2015), its "potential for unfair prejudice substantially outweighs its probative value" under Rule 403 when used as Defendants have proposed, *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011).

On the other hand, evidence of Plaintiff's conduct on July 5 may be admissible for purposes other than showing propensity, "such as proving motive, opportunity, intent, absence of

---

[3] Lexis citation unavailable.

5

mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "This Circuit has adopted an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012). Thus, courts "admit evidence of prior bad acts if the evidence is relevant to an issue at trial other than the defendant's character, and if the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice." *Gogol v. City of New York*, No. 15-cv-5703, 2018 WL 4616047, at *3, 2017 U.S. Dist. LEXIS 221874, at *8 (S.D.N.Y. Sept. 26, 2018) (internal quotation marks omitted). Here, Defendants argue that the Plaintiff's conduct on July 5 is admissible to impeach the testimony of Plaintiff and his witness—Mario Franco—because each of them allegedly falsely accused Gunsalus of being one of the perpetrators of the force used against Plaintiff on July 6. Defendants therefore contend that the June 5 incident demonstrates their knowledge of Officer Gunsalus' identity and the charges provide a motive for falsely accusing him. (Dkt. No. 109, at 6–9; *see also* Dkt. No. 115-1).[4]

As Defendants note, the credibility of the witnesses in this case "is paramount." (Dkt. No. 109 at 7). Accordingly, subject to balancing of the probative value against the prejudicial impact of such evidence under Rule 403 at the time of trial, the facts underlying the harassment charge—but not Plaintiff's conviction—may be admissible for the purpose of demonstrating Plaintiff's purported motive for making false allegations against Gunsalus in the notice of claim, as well as any lack of mistake as to Gunsalus's identity. Any evidence would be limited to what is relevant in this action, and Plaintiff's concerns about jury confusion could be "dealt with through a limiting instruction to the jury." *Adams v. City of New York*, 993 F. Supp. 2d 306, 320

---

[4] Defendants have not identified an admissible purpose for evidence of the conviction.

6

(E.D.N.Y. 2014). At this time, however, the Court does not have enough information before it to rule on the admissibility of this evidence. The Court notes that Plaintiff's July 16, 2014 Notice of Claim Against the City of Syracuse identifies Gunslaus as one of the officers who assaulted him. (Dkt. No. 115-1, at 2–3). The Court further notes that Plaintiff testified in his deposition that when he "made a complaint at the department," he thought it was Gunsalus but that "[w]hen Mario got out, Mario knew who the guy was and he told me that it wasn't him." (Dkt. No. 57-4 at 119). The Court therefore reserves ruling on this motion in limine until trial, "so that the motion is placed in the appropriate factual context." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011). Counsel should refrain from any discussion of this evidence until the Court has ruled.

### E. Evidence of Plaintiff's Convictions from July 6, 2014 Incident

Plaintiff argues that evidence of his convictions for rioting in the second degree and a trespass violation, arising from the July 6, 2014 incident, should be precluded. (Dkt. No. 88, at 6). Specifically, Plaintiff argues that evidence of his conviction for rioting in the second degree is irrelevant because "[o]nly what the Defendants confronted on the scene will be relevant to the force they used." (Dkt. No. 88, at 6). Defendants respond that: (i) the conduct underlying Plaintiff's rioting conviction, "throwing rocks at police officers . . . a mere 30 minutes prior to the 911 call that precipitated his arrest," is relevant for demonstrating "the reasonability of the officers' use of force based on their reasonable perception given the totality of the circumstances"; and (ii) Plaintiff's convictions "collaterally estop him from asserting factual or legal arguments to the contrary." (Dkt. No. 109, at 12–15). Defendants seek to use his rioting conviction to impeach his denial that he threw a rock at the police.

In assessing a claim for excessive force in violation of the Fourth Amendment, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and

7

circumstances confronting them, without regard to their underlying intent or motivation." *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005). Therefore, evidence that is relevant to such a claim necessarily bears on "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Harris v. Donohue*, No. 15-cv-01274, 2017 WL 3638452, at *3, 2017 U.S. Dist. LEXIS 134786, at *9 (N.D.N.Y. Aug. 23, 2017) (explaining that, in an excessive force case, "relevant evidence bears on whether the officers' conduct was objectively reasonable"). Accordingly, information known to Defendants at the time of the April 6, 2014 incident relating to, for example, the likelihood that Plaintiff was carrying a weapon or might use force against them is relevant. Thus, there is no dispute that Mauro's testimony, identifying Plaintiff as the person who threw a rock at a group of police officers earlier in the night, is admissible. Plaintiff has denied throwing a rock at the officers.

Defendants argue that Plaintiff's conviction for rioting in the second degree "may be used to collaterally estop the plaintiff [from] taking a contrary position to those charges at a subsequent trial." (Dkt. No. 100, at 5). "In a federal § 1983 suit, the same preclusive effect is given to a previous state court proceeding as would be given to that proceeding in the courts of the State in which the judgment was rendered." *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999). Under New York law, "a judgment of conviction is conclusive proof of the underlying facts in a subsequent civil action." *Alexander v. City of Peekskill*, 80 A.D.2d 626, 626 (2d Dep't 1981). "[I]n order for collateral estoppel to apply, the issue sought to be precluded must have been essential to the judgment and necessarily determined in the first action." *Owens v. Treder*, 873 F.2d 604, 607 (2d Cir. 1989). Accordingly, "[t]he doctrine of collateral estoppel requires a

detailed examination of the record in the prior state criminal case." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000). Finally, the "burden of establishing" that the issue was "necessarily decided in the prior proceeding . . . rests upon the proponent of preclusion." *Capital Tel. Co. v. Pattersonville Tel. Co.*, 56 N.Y.2d 11, 18 (N.Y. 1982).

Here, Defendants have not shown what facts were actually litigated and necessarily decided in Plaintiff's criminal trial.[5] Under New York Law, "[a] person is guilty of riot in the second degree when, simultaneously with four or more other persons, he engages in tumultuous and violent conduct and thereby intentionally or recklessly causes or creates a grave risk of causing public alarm." N.Y. Penal Law § 240.05. While Plaintiff denies that he threw a rock at the police, Defendants assert that this was the basis of his rioting conviction. Without anything before the Court that would permit it to make "a detailed examination of the record," the Court cannot determine the preclusive effect of Plaintiff's rioting conviction, if any, at trial. On the other hand, with respect to the trespass violation, Plaintiff's counsel stated that Plaintiff will not contest that he was trespassing, and the Defendants have failed to identify any relevance to the trespass conviction. Accordingly, at this time Plaintiff's motion to preclude evidence of his convictions is granted, without prejudice to the Defendants' right to present evidence that would support application of the doctrine of collateral estoppel as to the rioting conviction. Defendants may submit a supplemental letter brief with supporting evidence from the state court record by June 6, 2019; the Plaintiff may respond by June 10, 2019.

---

[5] Moreover, the cases Defendants cite do not indicate that a criminal conviction necessarily gives preclusive effect to every fact alleged in the underlying criminal complaint. *See, e.g.*, *State of N.Y. v. Hendrickson Bros.*, 840 F.2d 1065, 1081 (2d Cir. 1988) ("A prior judgment of conviction may be used as prima facie evidence in a subsequent civil suit only with respect to matters of fact or law necessarily decided by the conviction and the verdict on which it was based.") (citation omitted); *Diggs v. New York Police Dep't*, No. 04-cv-1849, 2005 WL 3533158, at *4, 2005 U.S. Dist. LEXIS 38244, at *10 (E.D.N.Y. Dec. 22, 2005) (concluding that, where "the jury found that plaintiff fired a weapon with the intent to kill" police officer, the plaintiff was "collaterally estopped from arguing that he was unconscious or that he otherwise did not in fact fire a weapon with the intent to kill").

### F. Motion to Preclude Evidence of Plaintiff's Acquittal of Resisting Arrest

Defendants argue that Plaintiff should be precluded from introducing evidence of his acquittal for resisting arrest stemming from his conduct on July 6, 2014. (Dkt. No. 100, at 2–4). Plaintiff responds that, because Defendants will assert that their use of force was reasonable by offering evidence that Plaintiff resisted arrest, he will be prejudiced unless he may offer evidence that he was acquitted for resisting arrest. (Dkt. No. 108, at 1–2). Evidence of a "judgment of acquittal," however, "is not usually admissible to rebut inferences that may be drawn from the evidence that was admitted." *United States v. Viserto*, 596 F.2d 531, 537 (2d Cir. 1979). Such evidence "is not relevant because it does not prove innocence but rather merely indicates that the prior proceeding failed to meet its burden of proving beyond a reasonable doubt at least one element of the crime." *United States v. Ashburn*, No. 11-cr-0303, 2015 WL 729818, at *2, 2015 U.S. Dist. LEXIS 20027, at *7 (E.D.N.Y. Feb. 19, 2015) (internal quotation marks omitted). Moreover, "evidence of acquittals generally [is] inadmissible at civil trials concerning the same incident," because "in the criminal case the prosecution had to prove its case using the 'beyond a reasonable doubt' standard," which is "much higher than the 'preponderance of the evidence' standard used in civil cases." *Cross v. Potter*, No. 09-cv-1293, 2010 WL 5314151, at *6, 2010 U.S. Dist. LEXIS 134540, at *21 (N.D.N.Y. Dec. 20, 2010) ("It is possible for the preponderance of the evidence standard to be satisfied even if the higher beyond a reasonable doubt standard is not."). Accordingly, Plaintiff's acquittal for resisting arrest is inadmissible, and Defendant's motion is therefore granted.

### G. Motion to Preclude Evidence of Plaintiff's Good Character

Defendants move to preclude Plaintiff from introducing any evidence of Plaintiff's character. (Dkt. No. 100, at 7–8). Plaintiff does not oppose this motion. Accordingly, at this time Defendants' request is denied as moot.

### H. Motion to Preclude Portions of Audio from July 6, 2014 Video of Plaintiff's Booking

Both parties have moved to preclude certain portions of the audio recorded during the videotaping of Plaintiff's booking at the Onondaga County Justice Center on July 6, 2014. (Dkt. No. 100, at 9; Dkt. No. 108, at 4–5). At the May 29, 2019 pretrial conference, the parties indicated that they would submit the specific portions of the audio that are disputed by June 3, 2019. Accordingly, the Court will rule on this issue following review of the video.

### I. Motions to Preclude Medical Records, Statements Within Those Records, and Testimony Related to Plaintiff's Diagnoses

Defendants move to preclude the introduction of certain medical records without "a sponsoring medical professional to testify to the foundation of medical records at trial." (Dkt. No. 100, at 11). At the May 29, 2019 pretrial conference, the parties indicated that they had stipulated to admission of medical records from Upstate University Hospital and the Onondaga County Justice Center. Plaintiff indicated that there were no other medical records related to his treatment after the July 6, 2014 incident that he intended to introduce at trial. Accordingly, Defendants' motion to preclude medical records is denied as moot.

Defendants move to preclude introduction of statements contained within his medical records as to Defendants' fault. (Dkt. No. 100, at 12–13). Federal Rule of Evidence 803(4) excludes from the rule against hearsay a statement that "is made for—and is reasonably pertinent to—medical diagnosis or treatment; and . . . describes medical history; past and present symptoms or sensations; their inception; or their general cause." The Advisory Committee Notes indicate that, while "statements of the patient's condition are exempted from the hearsay rule because of the patient's strong motivation to be truthful in order to obtain the appropriate diagnosis and treatment," statements that go beyond causation . . . and assign fault for a medical condition are not excepted." Fed. R. Evid. 803(4), Advisory Comm. Notes, 1972 Proposed

11

Rules. "So long as the identity of the perpetrator is not disclosed, a patient's statement describing how an injury occurred is pertinent to a physician's diagnosis and treatment." *Kokoska v. City of Hartford*, No. 12-cv-01111, 2014 WL 4724879, at *2, 2014 U.S. Dist. LEXIS 133262, at *6 (D. Conn. Sept. 23, 2014) (internal quotation marks omitted); *see also Johnson v. Tuffey*, No. 01-cv-1907, 2011 WL 4345285, at *5, 2011 U.S. Dist. LEXIS 104550, at *13–15 (N.D.N.Y. Sept. 15, 2011). Here, the statements attributing fault to Defendants—e.g. "altercation with police" and "assault victim"—are inadmissible under Federal Rule of Evidence 803(4), but other statements made for the purposes of his medical diagnoses and treatment—e.g. "direct punches and kicked in the face" and "hit with the end of a flashlight"—are admissible. Accordingly, Defendants' motion is granted in part. Defendants are directed to provide Plaintiff with a proposed redacted version of any such records prior to trial.

Finally, Defendants argue that "lay opinions of material witnesses as to medical diagnoses that require an expert" should be precluded, citing to Plaintiff's testimony that he had a broken nose and a concussion. (Dkt. No. 100, at 14–15). Plaintiff opposes this motion, asserting that he "believes he was told by the Hospital he had a fractured nose." (Dkt. No. 108, at 7). Plaintiff, however, has failed to cite to any basis for admitting the hearsay statement that medical personnel told him he had a fractured nose. Furthermore, under Federal Rule of Evidence 701, a lay witness's testimony "in the form of an opinion is limited to one that is: . . . rationally based on the witness's perception" and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Accordingly, Plaintiff may testify concerning his perceptions following the events of July 6, 2014, such as the fact of his injuries, his symptoms, and physical pain. He may not, however, testify to opinions "based on

scientific, technical, or other specialized knowledge." Fed. R. Evid. 701(c). Accordingly, Defendants' motion is granted.

**J.      Motion to Preclude Evidence of Police Officers' Prior Injuries or Bad Acts**

Defendants move to preclude any evidence of injuries to Officer Gunsalus or Defendant Mauro related to their prior use of force against other individuals or the prior bad acts from the personnel files of any other officers. (Dkt. No. 100, at 15–18). Plaintiff does not intend to introduce evidence of Gonsalus's earlier incident. (Dkt. No. 108, at 8). At the May 29, 2019 pretrial conference, Plaintiff's counsel indicated that he does have impeachment evidence regarding Officer Mauro's broken hand and surgery, and that counsel will provide this to the Court to obtain a ruling before seeking to use that evidence. Counsel further indicated that he did not intend to introduce any evidence of any officer's prior bad acts unless Defendants open the door to the admission. Accordingly, Defendants' motions regarding Officer Gunsalus's prior injuries and any testifying officers' prior bad acts are denied as moot, and the Court reserves its decision regarding Defendant Mauro until the appropriate time at trial.

**K.      Motion to Preclude Evidence of Plaintiff's Economic Damages**

Defendants move to preclude any evidence of Plaintiff's economic damages resulting from the July 6, 2014 incident. (Dkt. No. 100, at 17). At the May 29, 2019 pretrial conference, Plaintiff indicated that he did not intend to introduce any such evidence at trial. Accordingly, Defendants' motion is denied as moot.

**L.      Motion to Preclude Evidence of Officer Mims' Prior Bad Acts or Convictions**

Defendants move to preclude any evidence relating to Officer Mims' bad acts or convictions since the events of July 6, 2014. (Dkt. No. 100, at 20–21). Plaintiff asserts that he has evidence of Mims' dishonesty. (Dkt. No. 108, at 9). Although Defendants have since indicated that they intend call Officer Mims at trial only if necessary, Plaintiff has expressed his

13

intention to call him as a witness during his case in chief, if possible. Mims is, however, according to Defendants no longer in New York or subject to their subpoena power. (Dkt. No. 113). At the May 29, 2019 pretrial conference, Defendants agreed to provide Plaintiff with Officer Mims' most recent contact information. Plaintiff indicated that, should Officer Mims appear as a witness at trial, he will inform the Court and request a ruling before offering this evidence. Accordingly, at this time Defendants' motion is denied without prejudice to renewal if Mims is a witness at trial.

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Plaintiff's motion in limine (Dkt. No. 88) is GRANTED in part and DENIED in part as set forth above, and the Court reserves its ruling as to the motion to preclude evidence from the July 5 incident, as set forth above; and it is further

**ORDERED** that Defendants' motion in limine (Dkt. No. 100) is GRANTED in part and DENIED in part as set forth above, and the Court reserves its ruling as to the motion to preclude portions of the video and impeachment evidence regarding Officer Mauro.

**IT IS SO ORDERED.**

Brenda K. Sannes
U.S. District Judge

Dated: June 3, 2019
Syracuse, New York