# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

ELIJAH JOHNSON,

                              Plaintiff,                    5:16-cv-00622 (BKS/ML)

v.

POLICE OFFICER MAURO, POLICE OFFICER
LASHOMB, and POLICE OFFICER QUONCE, all sued
herein in their capacity as individuals,

                              Defendants.

---

**Appearances:**

*For Plaintiff Elijah Johnson:*
Fred Lichtmacher
The Law Office of Fred Lichtmacher PC
116 West 23rd Street, Suite 500
New York, New York 10011

*For Defendant Joseph Mauro:*
Kristen E. Smith
Corporation Counsel of the City of Syracuse
Christina F. DeJoseph
Todd M. Long
300 City Hall
Syracuse, New York 13202

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Elijah Johnson brought this action under 42 U.S.C. § 1983, alleging, inter alia, that Syracuse Police Officers Joseph Mauro ("Defendant"), William LaShomb, and Gordon Quonce violated his Fourth Amendment rights during his July 6, 2014 arrest. A jury trial was held from June 12, 2019 to June 24, 2019. The jury found Defendant Mauro liable for excessive

force, assessing $25,000 in compensatory damages, (Dkt. No 145), and $10,000 in punitive damages. (Dkt. No. 148). Plaintiff now moves for attorney's fees under 42 U.S.C. § 1988(b). (Dkt. No. 159). Defendant opposes the motion and seeks to reduce Plaintiff's fees. (Dkt. No. 163). For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

## II. DISCUSSION[1]

### A. Attorney's Fees in § 1983 Cases

#### 1. "Prevailing Party" Under § 1988

To "ensure effective access to the judicial process for persons with civil rights grievances," *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), § 1988(b) empowers the Court to award reasonable attorney fees to the "prevailing party" in a § 1983 action. 42 U.S.C. § 1988(b). "Determining whether an award of attorney's fees is appropriate requires a two-step inquiry." *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996). "First, the party must be a 'prevailing party' in order to recover." *Id.* To "qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992).

Here, Plaintiff litigated this case to trial and obtained both compensatory and punitive damages awards against Defendant Mauro. Plaintiff "has clearly prevailed on a 'significant claim affording some of the relief sought.'" *Mendoza v. City of Rome*, 162 F.R.D. 260, 263 (N.D.N.Y. 1995) (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989)). Thus, the Court finds Plaintiff is a "prevailing party" under § 1988.

---

[1] The Court assumes familiarity with the facts and procedural history of this case.

### 2. The Reasonable Hourly Rate

After the court finds that a party has prevailed, it must determine a reasonable fee to award to prevailing party's attorneys. *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). The lodestar approach is generally used to calculate reasonable attorney fees. "Under this approach, the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals." *Id.*; *DiFilippo v. Morizio*, 759 F.2d 231, 234 (2d Cir. 1985) ("[W]here . . . the party achieves success on the merits, an award of all reasonable hours at a reasonable hourly rate, i.e., the lodestar figure, is presumptively appropriate."). The prevailing party is also entitled to attorney fees for hours expended in bringing its § 1988 application. *Restivo v. Nassau Cty.*, No. 06-cv-6720, 2015 WL 7734100, at *2 n.3, 2015 U.S. Dist. LEXIS 160336, at *5 n.3 (E.D.N.Y. Nov. 30, 2015), *aff'd sub nom. Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017) (citing *Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1060 (2d Cir. 1995)). Thus, the Court must arrive at a reasonable hourly rate for the attorneys and paraprofessionals who worked on the case and "examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (quoting *DiFilippo*, 759 F.2d at 235–36).

#### a. Out-of-District Rates

The Supreme Court has explained that district courts should use the "prevailing market rates in the relevant community" in calculating the lodestar. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Second Circuit has interpreted the "community" to mean "the district where the district court sits." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008) (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir.1983)); *Grant v. City of Syracuse*, 357 F. Supp. 3d 180, 200–01 (N.D.N.Y. 2019) ("The Second Circuit 'forum rule' generally requires use of 'the hourly

rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" (quoting *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 290 (2d Cir. 2011))).

"[W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009). To "overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id.* The party "seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." *Id.* at 176. "Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise," *id.*, or by showing that "local counsel possessing requisite experience were unwilling or unable to take the case." *Id.* (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987)).

Here, Plaintiff seeks out-of-district hourly rates of $575 for Fred Lichtmacher,[2] $250 for now-associate Sherry Wang,[3] $80 for paralegal Shelly Chen, and $80 for "[l]egal assistant/paralegal" Norman Chuk. (Dkt. No. 159-1, at 17–19). In support of his motion for fees, Plaintiff has submitted the following: a declaration and list of expenses from lead attorney Fred Lichtmacher, (Dkt. Nos. 159-5; 159-6), a declaration and list of expenses from associate Sherry

---

[2] In the alternative, Plaintiff argues, without citation to caselaw, that if he is awarded Northern District rates, the rate should [a]t a bare minimum . . . be adjusted for inflation," shifting the high end of the range for in-district attorneys—the "top rate"—from $350 to $418 per hour. (Dkt. 159-1, at 14). The Court declines to do so and elects instead to survey rates granted in this district's recent cases.

[3] Wang has submitted records under two different hourly rates—for hours prior to and following her admission to the bar. Wang's first set of hours are billed at a paralegal rate of $90. (Dkt. No. 159-7).

4

Wang, (Dkt. Nos. 159-4; 159-7), declaration and time sheets from legal assistant Shelly Chen, (Dkt. Nos. 159-11; 159-12), a declaration from legal assistant/paralegal Norman Chuk, (Dkt. No. 159-13), a declaration from civil rights attorney Gabe Harvis, (Dkt. No. 159-8), a declaration from attorney Steven Halperin, (Dkt. No. 159-9), and a declaration from Plaintiff's criminal defense attorney Irene Flores. (Dkt. No. 159-10).

Plaintiff makes several arguments in support of his contention that that the Court should deviate from the forum rule. First, he argues that there is an unwillingness among local attorneys "to take on matters involving civil rights litigation," that "there is obviously an overwhelming need for out-of-district counsel in the Northern District," and that "a fair rate should be paid" to "not dissuade out-of-district counsel from taking these cases." (Dkt. No. 159-1, at 11). In his memorandum of law, Plaintiff lists 35 jury verdicts spanning from 1993 to present, including the verdict from this case.[4] (Dkt. No. 159-1, at 6–10). Ten of the cases resulted in plaintiff's verdicts,[5] four of which were litigated by out-of-district counsel. (*Id.* at 10). Two of the ten plaintiff's verdicts resulted in nominal damages awards of $1.00, (*id.*), both of which were litigated by in-district counsel. (*Id.*). Of the 35 cases, only "two of the Northern District cases tried by in-district counsel resulted in significant verdicts." (*Id.* at 10).

Defendant counters that Plaintiff does not "explain the parameters of the case search or his analytical method for developing this list," (Dkt. No. 163-4, at 15), and suggests that, even if Plaintiff could not find an attorney in the Syracuse or Onondaga County area, that attorneys in other counties within the Northern District "possess the requisite experience" to handle the case.

---

[4] The first set of listed verdicts is a reproduction of the list attorney Jesse Ryder submitted with a fee application in *Grant v. City of Syracuse*, 15-cv-0445, ECF No. 167, at 14–16 (Nov. 20, 2018).

[5] The Court notes that one of the plaintiff's verdicts, which was litigated by out-of-district counsel, was overturned post-trial. *See Ferreira v. City of Binghamton*, No. 3:13-CV-107, 2017 WL 4286626, at *7, 2017 U.S. Dist. LEXIS 159141, at *18-20 (N.D.N.Y. Sept. 27, 2017).

(Dkt. No. 163-4, at 10 (quoting *Yue Ping Sun v. Buffet Star of Vestal Inc.*, No. 14-cv-912, 2017 WL 11296886, at *2 (N.D.N.Y. June 21, 2017)[6])). Defendant also notes that six of the ten cases on Plaintiff's list resulting in a plaintiff's verdict were represented by in-district counsel. (Dkt. 163-4, at 15).[7] Moreover, Defendant includes a chart of his own that lists § 1983 cases assigned to this Court since Plaintiff initiated this lawsuit. (Dkt. No. 163-4, at 15–16). The chart also lists the plaintiff's attorneys who entered appearances in those cases, their practice locations, and the number of other § 1983 cases in which those same attorneys have entered appearances. (*Id.*). Of those nineteen cases, twelve include plaintiff's lawyers who practice in the Northern District. Finally, apart from his chart, Defendant also notes that the City of Syracuse has been a named defendant "in multiple § 1983 lawsuits" litigated by in-district counsel since Plaintiff filed this suit to further suggest that in-district lawyers are indeed bringing civil rights cases. (*Id.* at 17).

The Court agrees with Defendant that Plaintiff's arguments—including his compilation of case outcomes—fail to establish "the likelihood that use of in-district counsel would produce a substantially inferior result." *Simmons*, 575 F.3d at 176. As Defendant notes, most of the plaintiffs' verdicts on Plaintiff's chart were in fact litigated by in-district counsel. (Dkt. No. 159-1, at 9–10; Dkt. No. 163-4, at 15). Moreover, the Court is mindful that jury verdict amounts are not necessarily the best measure of success in civil rights cases. The "facts and circumstances of each case are different." *Trudeau v. Bockstein*, No. 05-cv-1019, 2008 WL 3413903, at *6, 2008 U.S. Dist. LEXIS 61758, at *18 (N.D.N.Y. Aug. 8, 2008). A low jury award—without additional

---

[6] No Lexis citation available.

[7] The Court notes that, even in *Grant*, the case in which this chart was initially submitted, the court denied the plaintiff's attorneys their requested out-of-district rates. 357 F. Supp. 3d at 202 ("[A]s Charles A. Bonner has failed to make a particularized showing to rebut the presumptive forum rule, the prevailing rates in the Northern District of New York will be applied.").

context—may not reflect the quality of lawyering; that is particularly so in the arena of constitutional torts, where "a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986); *see also Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir. 1982) ("The function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel."). Encouraging attorneys to bring low damages suits was, furthermore, a motivation behind enacting § 1988. *Rivera*, 477 U.S. at 575 ("Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress [in enacting § 1988] did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief."). Accordingly, the Court finds Plaintiff's compilation of jury awards does not overcome the presumption in favor of the forum rule.

Next, Plaintiff asserts that he hired Lichtmacher as a result of the efforts of his criminal defense attorney, Flores, who contacted Lichtmacher's office shortly after the events giving rise to this litigation. (Dkt. No. 159-1, at 11). Flores states in her declaration that she believed Plaintiff "needed outside counsel" because she was aware from her involvement in reforming "the way the Onondaga County Assigned Counsel Program was run" that other lawyers in the community were "afraid to 'make waves' for political reasons and/or wanted to continue to receive assignments from local judges." (Dkt. No. 159-10, at 3). Flores states that she read about a previous civil rights case where the plaintiff was represented by California attorney Charles Bonner but that she "could not find local attorneys of similar caliber in the Syracuse area." (*Id.* at 2). She recalled reading about Lichtmacher's successful representation of victims of police beatings in New York City, and contacted him, (*id.* at 2–3); she believed that "a lawyer who was

not part of the Syracuse, New York community would not be afraid to go after the Syracuse Police Department the way Mr. Lichtmacher did." (Dkt. No. 159-10, at 3).

In addition, Lichtmacher declares that attorneys "from Syracuse Corporation Counsel have repeatedly informed [him] that few attorneys from the Northern District will take civil rights cases arising from Syracuse." (Dkt. No. 159-1, at 12). This, according to Lichtmacher, leads litigants to reach out "to out-of-district counsel." (*Id.*) Lichtmacher also states that "he ha[s] been informed by Corporation Counsel, that [his] firm and Mr. Bonner's are adversaries in a substantial portion of the cases [Corporation Counsel] defends." (*Id.*; *see also* Dkt. No. 159-6, at 5).

Defendant responds that the Flores declaration is "insufficient to satisfy Plaintiff's burden" to overcome the forum rule, (Dkt. No. 163-4, at 6), and that "Plaintiff offers not one statement as to any affirmative action he had taken to engage local counsel within the entirety of N.D.N.Y." (*Id.* at 9). Defendant notes that the City of Syracuse has been named as a defendant in at least six lawsuits filed by in-district counsel since Plaintiff filed the instant suit, (Dkt. No. 163-4, at 17), and asserts that this shows that in-district lawyers are not hesitant to bring civil rights cases against the City of Syracuse.

The Court agrees that this evidence does "not overcome the presumption in favor of the forum rule." *Simmons*, 575 F.3d at 177. Even accepting Plaintiff's argument that attorneys within Syracuse would be reticent to sue the police department, that does not explain why, as Defendant points out, lawyers outside of Syracuse—but still within the Northern District—would be reticent to do so. *See Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 27 (N.D.N.Y. 2015) (explaining that the plaintiff failed to "identify what specific expertise or skills his attorneys possessed that attorneys within the Northern District of New York do not possess").

8

Moreover, Plaintiff has not shown that local counsel possessing the requisite experience were unwilling or unable to take the case. As Defendant points out, Flores offers only conclusory statements about her efforts to contact in-district counsel before contacting Lichtmacher. (Dkt. No. 159-10). Flores states that she "read about Alonzo Grant, who was also wrongfully beaten by Syracuse Police Officers" and that Grant "had hired Charles Bonner – a lawyer from California." (Dkt. No. 159-10, at 2). Flores then states that she could not find "attorneys of similar caliber [to Bonner] in the Syracuse area." (Dkt. No. 159-10, at 2). But Flores does not describe any affirmative steps she took to locate competent in-district counsel. Flores also states she "remember[ed] reading about several victims of beatings by NYPD cops" represented by Lichtmacher that "were awarded damages." (*Id.*). She then states that she "researched . . . and contacted [Lichtmacher]." (*Id.* at 2–3). Here, Plaintiff simply "appear[s] to have assumed that local counsel could not have achieved a successful result in this action without inquiring into the competence and expertise of attorneys within this district." *Grant*, 357 F. Supp. 3d at 202; *see also Doe v. Cornell Univ.*, No. 17-cv-0402, 2019 WL 1567535, at *7, 2019 U.S. Dist. LEXIS 62986, at *18–19 (N.D.N.Y. Apr. 11, 2019) ("Plaintiff has failed to justify an award of out-of-district rates because he has not shown that litigating this case required special expertise not available within this District."); *Monsour v. New York State Office for People with Developmental Disabilities*, No. 13-cv-00336, 2018 WL 3349233, at *18, 2018 U.S. Dist. LEXIS 113041, at *48–49 (N.D.N.Y. July 9, 2018) ("Plaintiff does not identify the in-district lawyers he contacted or detail the efforts he expended to retain local counsel with the ability or willingness to take on his case.").

While the Court finds that Plaintiff undoubtedly benefitted from Lichtmacher's fine work in this case, Plaintiff has "failed to make a particularized showing to rebut the presumptive forum

rule." *Grant*, 357 F. Supp. 3d at 202; *see also Simmons*, 575 F.3d at 176. The Court next considers the reasonable rates for each member of Plaintiff's legal team requesting fees, applying Northern District rates.

### b. Plaintiff's Legal Team's Reasonable Rates

A review of cases in this District indicates that the following hourly rates (or rate ranges) are reasonable: $275–$350 for experienced partners;[8] $165–$200 for junior associates;[9] and $90 for paralegals.[10]

### i. Fred Lichtmacher

The Court finds that the result here—a compensatory damages award of $25,000 along with a punitive damages award of $10,000—indicates that Plaintiff's attorneys obtained an excellent result. *Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."); *see also Kassim v. City of Schenectady*, 415 F.3d 246, 253 (2d Cir. 2005) ("The Supreme Court has consistently stressed the importance of the degree of the plaintiff's success in the litigation as a factor affecting the size of the fee to be awarded."). To reflect his commendable work, Lichtmacher will be "compensated at the rate of

---

[8] *See, e.g.*, *Doe*, 2019 WL 1567535, at *7, 2019 U.S. Dist. LEXIS 62986, at *18; *Cruz v. Sal-Mark Restaurant Corp.*, No. 17-cv-0815, 2019 WL 355334, at *7, 2019 U.S. Dist. LEXIS 13529, at *20 (N.D.N.Y. Jan. 28, 2019) (noting that "[r]ecent cases in the Northern District have upheld hourly rates between $250 and $350 for partners") (quoting *Deferio v. City of Syracuse*, No. 16-cv-0361, 2018 WL 3069200, at *3, 2018 U.S. Dist. LEXIS 103596, at *9 (N.D.N.Y. June 21, 2018)); *Parish v. Kosinski*, 17-cv-0344, 2018 WL 1475222, at *5, 2018 U.S. Dist. LEXIS 20134, at *16–17 (N.D.N.Y. Feb. 5, 2018) (granting a rate of $350 per hour for partners); *Pope v. Cty. of Albany*, No. 11-cv-0736, 2015 WL 5510944, at *10, 2015 U.S. Dist. LEXIS 123379, at *27 (N.D.N.Y. Sept. 16, 2015) (awarding $350 to a partner).

[9] *See, e.g.*, *Daniel E. W. v. Berryhill*, No. 17-cv-0271, 2019 WL 1986538, at *5, 2019 U.S. Dist. LEXIS 75781, at *14 (N.D.N.Y. May 6, 2019) ("Recent cases in the Northern District have upheld hourly rates between . . . $165 and $200 for associates." (quoting *Stevens v. Rite Aid Corp.*, No. 13-cv-0783, 2016 WL 6652774, at *3, 2016 U.S. Dist. LEXIS 159468, at *8 (N.D.N.Y. July 6, 2016))); *Curves Int'l, Inc. v. Nash*, No. 11-cv-0425, 2013 WL 3872832, at *5, 2013 U.S. Dist. LEXIS 104095, at *15 (N.D.N.Y. July 25, 2013) (finding $170 for attorneys with less than four years of experience to be reasonable); *Zalewski v. T.P. Builders, Inc.*, Nos. 10-cv-0876, 2012 WL 5880327, at *3, 2012 U.S. Dist. LEXIS 166263, at *13 (N.D.N.Y. Nov. 21, 2012) (awarding, in a seven-year-old case, $170 per hour for attorney with under four years of experience).

[10] *See, e.g.*, *Deferio*, 2018 WL 3069200, at *6, 2018 U.S. Dist. LEXIS 103596, at *17.

$350 per hour," a rate on the "high end of the reasonable rates within the Northern District." *Grant*, 357 F. Supp. 3d at 202 (awarding out-of-district attorney Northern District rates at $350 per hour in a recent excessive force case).

### ii. Sherry Wang

As a preliminary matter, Plaintiff has requested that Wang's paralegal rate be set at $90. (Dkt. 157-7, at 4). As noted above, this requested rate is in keeping with the District's reasonable rates. Defendant does not oppose the request. (Dkt. No. 164-4, at 19). Thus, $90 per hour is an appropriate rate for Wang's paralegal work.

Next, the Court must decide what to award Wang for the hours she devoted to the case following her admission to the bar. Wang requests $250 per hour for her time post-admission. (Dkt. No. 159-7, at 4). Defendant counters that Wang's hours should be compensated at $120 per hour, at the "low end" of the range for attorneys with under four years of experience. (Dkt. No. 163-4, at 18).

Wang was admitted to the New York State bar in February 2019, (Dkt. No. 159-7, at 2), meaning that she has less than one year of post-admission experience as an attorney. Wang states that she began working on this case "since [the] first day of [her] employment" with Lichtmacher's firm. (*Id.*). Although Wang requests the $90 per hour paralegal rate for all the time spent prior to her admission, her declaration states that she made substantive contributions to the case during that time, including "play[ing] a large role" drafting the summary judgment opposition, responding to Defendants' statement of material facts, and opposing Defendants' motions *in limine*. (*Id.*). Moreover, Wang states that she "worked on discovery," and otherwise helped "in preparation for trial." (*Id.*). The Court has reviewed the billing records in this case, considered Wang's experience, and reviewed Northern District fee awards to associates with

11

under four years' experience. *See supra* n.9, at 10. Taking the foregoing into consideration, the Court will award $170 per hour for Wang's associate hours on this case.

### iii.   Shelly Chen

Plaintiff has requested Chen's hourly rate be set at $80 per hour. According to her declaration, Chen "was the office manager and a legal assistant" in Lichtmacher's office. (Dkt. No. 159-11, at 1). Defendant argues that much of the work done by Chen counts as "secretarial work" that is not "compensable labor under § 1988." (Dkt. No. 163-4, at 15). The Court agrees in part. Having reviewed Chen's time records, the Court finds that some of Chen's work is indeed better-categorized as "clerical tasks" not compensable under § 1988. *See Dotson v. City of Syracuse*, No. 04-cv-1388, 2011 WL 817499, at *26, 2011 U.S. Dist. LEXIS 20374, at *72–73 (N.D.N.Y. Mar. 2, 2011), *aff'd*, 549 F. App'x 6 (2d Cir. 2013). Defendant does not dispute that, to the extent the Court categorizes the hours as "paralegal work," $80 per hour is appropriate. (*Id.* at 19). Accordingly, the Court awards Plaintiff fees for Chen's work at the rate of $80 per hour but will reduce Chen's hours by 10 percent to account for her non-compensable clerical work. *See Hines v. City of Albany*, 613 F. App'x 52, 54–55 (2d Cir. 2015) ("We have held that in dealing with items that are "excessive, redundant, or otherwise unnecessary . . . the [district] court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir.1998) (alteration in original) (internal quotation marks omitted)).

### iv.   Norman Chuk

Plaintiff requests that Chuk's hourly rate be set at $80 per hour. (Dkt. No. 159-1). Chuk is a "legal assistant/paralegal" in Lichtmacher's office and worked 8.25 hours on this case. (Dkt. No. 159-13, at 1). Defendant argues that Chuk's work is clerical and should not be characterized as paralegal work, (*id.*), and further argues that Chuk's November 2017 time entry, (Dkt. No.

159-13, at 1), is "oddly timed" because it reflects "trial prep work in November 2017," well over a year prior to trial, and that his later entry is "vague[]." (Dkt. No. 163-4, at 19). The Court agrees as to Chuk's first entry but disagrees as to the second, which the Court finds properly categorized as paralegal work. As such, the first entry will be excluded from Plaintiff's hours and the one remaining entry will be awarded at the requested rate of $80 per hour.

### 3. Reasonable Number of Hours

"The fee applicant also bears the burden of documenting the hours spent by counsel, and the reasonableness thereof." *Stevens v. Rite Aid Corp.*, No. 13-cv-783, 2016 WL 6652774, at *4, 2016 U.S. Dist. LEXIS 159468, at *9 (N.D.N.Y. July 6, 2016). In determining a reasonable fee, "the district court should exclude . . . hours that were not reasonably expended, including hours that are excessive, redundant, or otherwise unnecessary." *Osterweil*, 92 F. Supp. 3d at 28 (citing *Hensley*, 461 U.S. at 434) (internal quotations omitted). As noted above, "[i]n excluding hours that were not reasonably expended, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Id.* (citing *Kirsch*, 148 F.3d at 173 (internal quotations omitted)).

#### a. Clarity of Timekeeping Records

First, Defendant argues that Plaintiff's hours should be discounted because "the billing records of Plaintiff's counsel and his staff are replete with vague and ambiguous time entries." (Dkt. No. 163-4, at 21). In reply, Plaintiff argues—without citation—that Defendant's argument "overlooks cases where fee awards have been granted previously" and that to "demand more would create extra work for attorneys, which doubtless Defendant[] would object to their being compensated for." (Dkt. No. 166, at 2). The Court agrees with Defendants that some of the descriptions lack particularity. However, having carefully reviewed the billing descriptions, the hours claimed for those descriptions, and the timing of the work claimed, and based on the

13

Court's familiarity with this case and counsel's work, the Court finds that the hours expended appear to be reasonable and adequately documented.

b. **Excessiveness of Time Records**

Defendant argues that Plaintiff's billing is, at times, "duplicated and excessive." (Dkt. No. 163-4, at 18). Specifically, Defendant emphasizes the 51.7 hours expended on Plaintiff's response to defendants' summary judgment motion and the 62.4 hours spent on Plaintiff's fee motion. (Dkt. No. 163-4, at 21–23). Plaintiff responds that the cases cited by Defendant are inapposite. (Dkt. No. 166, at 4–5). The Court agrees with Plaintiff and will not reduce hours based on the time expended on either the opposition to summary judgment or the fees motion.

i. **Summary Judgment Motion**

With respect to the summary judgment motion, Defendant cites *Cover v. Potter*, No. 05-cv-7039, 2008 WL 4093043, at *7, 2008 U.S. Dist. LEXIS 66753, at *18–19 (S.D.N.Y. Aug. 29, 2008), for the proposition that Plaintiff's hours expended in opposition to summary judgment motion are excessive. In *Cover*, the attorney seeking fees billed 87.25 hours for summary judgment, over 50 percent more than Plaintiff seeks here. *Id.*, 2008 WL 4093043, at *7, 2008 U.S. Dist. LEXIS 66753, at *19. And in *Cover*, fees were ultimately only reduced by 10%. *Id.*. Accordingly, *Potter* is unhelpful in deciding this issue.[11]

Here, the Court notes that Defendant's summary judgment submissions exceeded 900 pages. *See Pastre v. Weber*, 800 F. Supp. 1120, 1126 (S.D.N.Y. 1991) (finding 128.75 hours expended to oppose summary judgment was reasonable where there was a "64–page opening

---

[11] Defendant also cites *Dotson v. City of Syracuse*, No. 04-cv-1388, 2011 WL 817499, at *25, 2011 U.S. Dist. LEXIS 20374, at *67–68 (N.D.N.Y. Mar. 2, 2011), *aff'd*, 549 F. App'x 6 (2d Cir. 2013). That case is likewise unpersuasive. There, the court found that 115.3 hours spent in "opposition to defendants' summary judgment motion" was excessive. *Id.* That is over twice the time Plaintiff claims in fees for his time spent opposing Defendant's summary judgment motion in this case.

14

memorandum of law, affidavits totaling 42 pages . . . with an additional 482 pages of exhibits"); *see also Rivera*, 477 U.S. at 580–81 n.11 (explaining that a defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C.Cir. 1980))). Thus, the Court declines to reduce Plaintiff's hours for the time expended opposing Defendant's motion for summary judgment.

### ii.     Fees Motion

With respect to Plaintiff's fee motion, the Court also finds Plaintiff's hours expended reasonable. Defendant argues that the absolute time—62.4 hours—spent preparing the fee motion is excessive. (*See* Dkt. No. 163-4, at 22–23). The Court finds that the more appropriate inquiry is, as Plaintiff argues, to examine the hours expended as a proportion of the total time claimed in the fee application.[12] "The Second Circuit has upheld fee awards where the time spent on the fee application was up to 24% of the total time claimed . . . [and] [o]ther courts within this Circuit have awarded fee application awards in the range of 8 to 24 percent of the total time claimed." *Nat. Res. Def. Council, Inc. v. Fox*, 129 F. Supp. 2d 666, 675 (S.D.N.Y. 2001) (quoting *Davis v. City of New Rochelle*, 156 F.R.D. 549, 561 (S.D.N.Y. 1994)). Here, according to Plaintiff, his request amounts to 11 percent of the total time claimed.[13] *See id.* (upholding a fee

---

[12] Moreover, the Court finds the cases cited by Defendant distinguishable from the circumstances here. *See Murray v. Mills*, 354 F.Supp.2d 231, 241 (E.D.N.Y.2005) (reducing fees requested for fee application from 150 hours where the case settled after three months and the plaintiff's "billing statement contain[ed] numerous instances of excessive and unreasonable billing"); *Curtis v. City of Kingston*, No. 114-cv-0951, 2016 WL 1223471, at *6, 2016 U.S. Dist. LEXIS 44643, at *16 (N.D.N.Y. Mar. 28, 2016) (reducing fees requested for fee application where "the attorneys' fees motion represent[ed] almost half of the requested fees"); *Access 4 All, Inc. v. 135 W. Sunrise Realty Corp.*, No. 06-cv-5487, 2008 WL 4453221, at *12, 2008 U.S. Dist. LEXIS 91674, at *35–36 (E.D.N.Y. Sept. 30, 2008) (finding 19.4 hours spent on drafting a fee application to be excessive and reducing it by half to where, unlike here, the case was litigated for less than a year); *Luessenhop v. Clinton Cty.*, 558 F. Supp. 2d 247, 270–71 (N.D.N.Y. 2008), *aff'd*, 324 F. App'x 125 (2d Cir. 2009) (reducing fees requested for fee application, which were 22 percent of the total hours requested, from 62 hours to 30 where a portion of plaintiff's fee application had been "replicat[ed]" from prior fee applications)

[13] By the Court's calculation, including the time Plaintiff spent replying to Defendant's opposition to this motion, (*see* Dkt. No. 166, at 5), the fee application actually comprises only approximately 9.4 percent of the total litigation.

request for 124.65 hours spent preparing a fee application, which amounted to "14.5 percent of the total time compensated"). Accordingly, the Court finds Plaintiff's claim of 62.4 hours to be reasonable.[14]

### iii. Criminal Proceedings

Defendant argues that the "approximately 8 hours related to Plaintiff's criminal defense must be excluded in their entirety" because "[a]ttorneys' fees incurred for a plaintiff's defense in prior criminal proceedings are not compensable under § 1988." (Dkt. No. 163-4, at 24). Plaintiff counters that it would "be impossible to try this matter without detailed knowledge of what transpired at the criminal trial." (Dkt. No. 166, at 5). The Court agrees with Plaintiff.

The cases cited by Defendant involve attorneys that worked on an underlying criminal case before bringing § 1983 actions. (Dkt. No. 163-4, at 24 (citing *McKever v. Vondollen*, 681 F. Supp. 999, 1003 (N.D.N.Y. 1988) (explaining that plaintiff was not entitled to fees for "plaintiff's defense in a prior criminal proceeding[]")))). Here, Plaintiff seeks fees for work related to understanding the contours of his criminal proceedings in furtherance of this litigation, not for representation during Plaintiff's criminal proceedings. (*See* Dkt. No. 159-5, at 7). Accordingly, the Court declines to exclude this time.

### i. Travel Time

Defendant argues that "[b]ecause Plaintiff chose to hire out-of-district counsel rather than local counsel, he should not be entitled to attorneys' fees for travel time. (Dkt. No. 163-4, at 23). Plaintiff, however, has "asked for no such fees" and only included them "in his Time Sheets to be comprehensive." (Dkt. No. 166, at 4). Accordingly, Defendant's argument is without merit.

---

[14] The Court notes that it adds 4.1166 hours to Lichtmacher's hours and 5.6166 hours to Wang's hours to reflect their time expended on the fee motion reply. (Dkt. No. 166, at 5).

### c. Plaintiff's Degree of Success

Defendant argues that Plaintiff is not entitled to fees for "severable unsuccessful claims" (Dkt. No. 163-4, at 24–25 (quoting *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004) (per curiam))). Defendant further argue that "Plaintiff was successful in obtaining a jury verdict against only . . . Sgt. Mauro on his . . . excessive force claim." (Dkt. No. 163-4, at 25). Plaintiff counters that the claims here "involved a common core of facts and are based on related legal theories making it difficult to divide the hours expended on a claim-by-claim basis." (Dkt. No. 166, at 3). The Court agrees with Plaintiff.

To be sure, Defendant is correct that "where a prevailing plaintiff has succeeded on only some of his claims, an award of fees for time expended on unsuccessful claims may not be appropriate." *Rivera*, 477 U.S. at 568. In these situations, the Court "should consider whether or not the plaintiff's unsuccessful claims were related to the claims on which he succeeded, and whether the plaintiff achieved a level of success that makes it appropriate to award attorney's fees for hours reasonably expended on unsuccessful claims." *Id.*; *see also Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.").

When a plaintiff succeeds on only some of his claims for relief, the Court considers two factors. First, whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded." *Grant*, 357 F. Supp. 3d at 204 (quoting *Hensley*, 461 U.S. at 434). And second, whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* (quoting *Hensley*, 461 U.S. at 434). If

Plaintiff's work was "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 205 (quoting *Hensley*, 461 at 435).

Here, the Court finds that Plaintiff "achieved a degree of success commensurate with the hours expended on the litigation by their attorneys." *Id*. *Grant*, where the court declined to discount the plaintiff's attorneys' fees on this basis, is instructive. *Id*. There, as here, all of Plaintiff's "claims arose from the same events," a use of force incident by law enforcement. Moreover, here, as in *Grant*, Plaintiff Johnson was not successful on "all [of his] claims, including those claims against" LaShomb, Quonce, and "the *Monell* claim against the City of Syracuse," which, in this case, Plaintiff voluntarily dismissed. *See id.* Nevertheless, the Court finds that the claims litigated "in this action . . . and the work required by [Plaintiff's] attorneys with respect to each of those claims, were interrelated with one another" and are best not viewed "as a series of discrete claims." *Id.* Moreover, the Court notes that here, unlike in *Grant*, the jury awarded punitive damages against Defendant Mauro. (Dkt. No. 145, at 3). Accordingly, the Court declines to reduce Plaintiff's fee because he did not prevail on each of his claims.[15]

### d. Costs

In his fee application, Plaintiff requests reimbursement for "expenses" in the amount of $2,997.18. (Dkt. No. 159-1). Defendant argues that, because Plaintiff failed to "submit a bill of

---

[15] Citing *Deferio*, 2018 WL 3069200, 2018 U.S. Dist. LEXIS 103596, Defendant argues that any fee award should be significantly reduced based on Plaintiff's failure to prevail on his *Monell* claim against the City of Syracuse. (*See* Dkt. No. 163-4, at 26). Defendant's reliance on *Deferio* is misplaced. There, unlike here, the crux of the plaintiff's action centered around a *Monell* claim—in *Deferio*, the plaintiff directly challenged an official municipal policy. *See id.*, 2018 WL 3069200, at *1, 2018 U.S. Dist. LEXIS 103596, at *2 (reducing fee award "to account for Plaintiff's lack of success as to his *Monell* claims" and observing that "a priority of Plaintiff's litigation [had been] to secure municipal liability"). Here, by contrast, the central issues revolved around the specific use of force incident.

costs as required by the Local Rules," his "request for taxable costs should be denied." (Dkt. No. 163-4, at 27–28). Plaintiff counters that no such bill is required. (Dkt. No. 166, at 1). The Court agrees with Plaintiff.

"Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54. "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quoting *United States Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir.1989)). Attorneys' expenditures on litigation are unnecessary and non-compensable when "they exceed the minimum that a reasonable paying client would pay absent a fee-shifting arrangement." *Grant*, 357 F. Supp. 3d at 208 (quoting *Amerisource Corp. v. Rx USA Intern Inc.*, 2010 WL 2160017, at *15, 2010 U.S. Dist. LEXIS 52424, at *46 (E.D.N.Y. 2010)). The Second Circuit has identified "out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate." *Id*. (quoting *Kuzma v. Internal Revenue Service*, 821 F.2d 930, 933–34 (2d Cir. 1987)). Courts have construed these categories of expenses as "non-exhaustive." *Deferio*, 2018 WL 3069200, at *9, 2018 U.S. Dist. LEXIS 103596, at *26–27 (N.D.N.Y. June 21, 2018).

Here, the Court finds that the supporting documentation supplied by Plaintiff "evidences reasonable out-of-pocket expenses recoverable pursuant to 42 U.S.C. § 1988" *Grant*, 357 F. Supp. 3d at 208. The requested expenses include a filing fee, service of process fees, mailing expenses, deposition transcript expenses, obtaining and reviewing medical records, and investigator fees. (Dkt. No. 159-3, at 7–8; Dkt No. 159-6). The Court finds that Plaintiff's

requested expenses are the kind a "reasonable paying client would pay absent a fee-shifting arrangement." *Grant*, 357 F. Supp. 3d at 208. Accordingly, the Court grants Plaintiff's request for $2,997.18 in costs.

### 4. Final Calculation

In sum, after carefully considering all the relevant factors, adjusting the requested rates and the requested hours as discussed above, the Court finds Plaintiff is entitled to attorney's fees in the total amount of $175,289.50, broken down as follows:

| Attorney/Paraprofessional | Adjusted Rate | Adjusted Hours | Reasonable Fees |
|---|---|---|---|
| Fred Lichtmacher | $350 | 392.76 | $137,466.00 |
| Sherry Wang (Associate) | $170 | 175.04 | $29,756.80 |
| Sherry Wang (Paralegal) | $90 | 69.23 | $6,230.70 |
| Shelly Chen | $80 | 16.45 | $1,316.00 |
| Norman Chuk | $80 | 6.50 | $520.00 |
| **TOTAL FEES:** | | | **$175,289.50** |

In addition, Plaintiff is awarded $2,997.18 in costs and expenses for a total of $178,286.68.

## III. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Reasonable Attorneys' Fees and Costs (Dkt. No. 159) is **GRANTED in part and DENIED part**; and it is further

**ORDERED** that Plaintiff is awarded a total of **$175,289.50** in attorney's fees and **$2,997.18** in costs and expenses for a total of **$178,286.68**.

**IT IS SO ORDERED.**

Dated: November 7, 2019

Brenda K. Sannes
U.S. District Judge